UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division

NAPLES PRIDE,

        Plaintiff;

  v.

CITY OF NAPLES, et al.,

        Defendants.

Case No. 2:25-cv-291
Judge: Hon. John E. Steele
Magistrate Judge: Hon. Kyle C. Dudek

---

**BRIEF FOR AMICI CURIAE LIBERTY COUNSEL, CHELSEA MELONE,
AND THEODORE & KIMBERLY COLLINS IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

Horatio G. Mihet, Esq.
Kristina S. Heuser, Esq.
Daniel J. Schmid, Esq.
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
hmihet@lc.org
kheuser@lc.org
dschmid@lc.org

*Attorneys for Amicus*

# TABLE OF CONTENTS

INTEREST OF AMICI CURIAE .......................................................................1

INTRODUCTION .........................................................................................2

SUMMARY OF THE ARGUMENT ...................................................................2

ARGUMENT ...............................................................................................4

A. Naples Pride Is Unlikely to Prevail on the Merits. ..................................5

    1. The City of Naples Is Prohibited by State Statute from Issuing a Permit for a Drag Show to Be Held in View of Minors. .......................................5

    2. The City of Naples' Permitting Scheme Passes Constitutional Muster, As Applied. ..............................................................................................8

        a. Defendants' Requirement that the Drag Performance Be Held Indoors and Limited to Adults Resulted from the City's Non-Discriminatory Application of Its Permit Criteria. .............................................................8

        b. The Security Fees Assessed by the City of Naples Do Not Reflect That the City's Permitting Scheme is Unconstitutional, As Applied. ......................10

    3. The City of Naples' Permitting Scheme is Constitutional on its Face. ............10

        a. The Guidelines Set Forth in the City's Special Event Permit Manual Are Content Neutral. ......................................................................................11

        b. The Guidelines Imposed by the City's Permit Event Manual Are Narrowly Tailored to Serve a Significant Governmental Interest. .............................14

        c. The Conditions Imposed by the City on the Special Event Permit Issued to Naples Pride Leave Open Ample Alternative Channels for Communication of the "Information". ...................................................................................16

B. Plaintiff Will Not Suffer Irreparable Injury if the Requested Preliminary Injunction is Denied. ....................................................................................17

C. The City's Interest in Preserving the Status Quo Far Outweighs Any Alleged Harm Plaintiff May Suffer Without the Requested Injunction. ..........................19

D. The Requested Injunction Is Contrary to the Public Interest in Maintaining Order and Safety, and Protecting Children from Exposure to Obscene or Otherwise Harmful Material. ..........................................................................................20

CONCLUSION ............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) .......................................... 16, 20

*Bledsoe v. City of Jacksonville Beach*, 20 F. Supp. 2d 1317 (M.D. Fla. 1998) ...............13

*Brandt v. Bd. of Educ.*, 480 F.3d 460 (7th Cir. 2007) ...................................................18

*Bus. & Residents All. of E. Harlem v. Martinez*, 2003 WL 21982960 (S.D.N.Y. Aug. 20, 2003)...............................................................................................................................18

*CAMP Legal Def. Fund v. City of Atlanta*, 451 F.3d 1257 (11th Cir. 2006)...................10

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) .................................9

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301 (11th Cir. 2000) ...................................................................................................................... 10, 12

*Cox v. New Hampshire*, 312 U.S. 569 (1941) .................................................................3

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266 (11th Cir. 2021)..............................................................................................................................13

*Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024) ..................... 4, 17, 20

*Ginsberg v. New York*, 390 U.S. 629 (1968)..................................................................20

*Henry v. Sheriff of Tuscaloosa Cnty.*, --- F.4th ----, 2025 WL 1177671 (11th Cir. Apr. 23, 2025)................................................................................................................................3

*HM Florida-ORL, LLC v. Griffin*, 679 F. Supp. 3d 1332 (M.D. Fla. 2023) ..................6

*Int'l Caucus of Labor Comm. v. City of Montgomery*, 111 F.3d 1548 (11th Cir. 1997) ....11

*Jacobson v. Florida Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020)............................6, 7

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ..........................................16

*Lackey v. Stinnie*, 145 S. Ct. 659 (2025)......................................................................19

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) ...........................................4

*Park of Commerce Assoc. v. City of Delray Beach*, 636 So. 2d 12 (Fla. 1994) .................12

*Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989) ................................... 16, 20

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000)............................................. 4, 17, 19

*Spectrum WT v. Wendler*, 693 F. Supp. 3d 689 (N.D. Tex. 2023) ..............................18

*Sullivan v. City of Augusta*, 511 F.3d 16 (1st Cir. 2007) ............................................13

*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) ........................................ 3, 10, 11

*Tiber Lab'ys, LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373 (N.D. Ga. 2007) .18

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981).......................................................19

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989) ............................................. 13, 17

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ...........................................6

## Statutes

Fla. Stat. Ann. § 16.01 ...................................................................7

Fla. Stat. Ann. § 166.021 ..............................................................7

Fla. Stat. Ann. § 255.70 ............................................................3, 6

Fla. Stat. Ann. § 27.02 ..................................................................7

Naples, Fla., Code of Ordinances § 46-39........................................8, 9

Naples, Fla., Code of Ordinances §2-167 ...........................................12

## Other Authorities

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ...........7

Special Events, City of Naples, Fla. ......................................................12

# INTEREST OF AMICI CURIAE[1]

Liberty Counsel is a national civil liberties organization that provides education and legal defense on issues relating to religious liberty, the family, and sanctity of life. Liberty Counsel has been substantially involved in advocating for the First Amendment and families. Liberty Counsel frequently represent clients in First Amendment litigation in every federal circuit court of appeals and numerous federal district court. Its attorneys have spoken and testified before Congress on matters relating to government infringement on First Amendment rights. Liberty Counsel routinely advises and represents parents alarmed by the increasing exposure of children to sexually suggestive material and performances—whether in public schools or in publicly funded spaces such as parks and libraries.

One such parent, a Collier County resident, contacted Liberty Counsel after witnessing Plaintiff's prior drag show held in Cambier Park. That parent documented scenes from the drag show that directly contradict—and, in fact, conclusively refute— Plaintiff's characterization of the drag show as "family friendly." (Pl.'s Mot. Prelim. Inj. 2; Dkt. 12 at 2.) These photos depict performers simulating sexual acts and adopting poses plainly unsuitable for viewing by children. This parent, Kimberly Collins and her husband, Theodore Collins, are parents to children ages five, seven, nine, and 14. They often take their three younger children to the Cambier Park

---

[1] No counsel for any party authored this brief in whole or in part, and no person other than Amici or their counsel made a monetary contribution intended to fund this brief's preparation or submission.

playground. Also joining as amicus is Chelsea Melone, a resident of the City of Naples who lives within walking distance of Cambier Park and frequents the Cambier Park playground with her children, ages two, five, and six. Both sets of parents fully support restrictions placed by the City of Naples upon the Naples Pride event to protect their children from exposure to the sexual material comprising the event.

## INTRODUCTION

Naples Pride asks this Court to order the City of Naples to modify the existing permit granted to Naples Pride to hold its annual Pridefest at Cambier Park, which is located in the heart of downtown Naples. In adherence to state law and in recognition of the First Amendment rights of the Plaintiff organization, and balancing these things with the variety of public interests at stake, the City granted Plaintiff its requested permit with the caveat that one portion of the event – a drag performance – be held indoors and accessible by adults only. The permits issued in 2023 and 2024 for this same event had the same conditions and were assented to by Naples Pride. Now, with the support of the ACLU, Naples Pride seeks this Court's intervention and asserts that injunctive relief is urgently needed. For the reasons discussed below, this Court should deny the injunctive relief sought by Plaintiff, and uphold the conditions imposed by City officials upon the event.

## SUMMARY OF THE ARGUMENT

It is beyond cavil that a local government entity does not run afoul of the First Amendment by establishing reasonable time, place, and manner restrictions on speech and expression in its public spaces. Naples Pride and the ACLU decry the reasonable

restrictions put in place by the City of Naples as censorship, but the Supreme Court has made clear that "[s]uch a traditional exercise of authority does not raise [] censorship concerns." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322–23 (2002). Regulations of the use of a public forum that ensure the safety and convenience of the people are not "inconsistent with civil liberties but ... [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." *Id.* (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941)).

Importantly, the Court must not overlook or discount the nature of the "expression" at issue here. Naples Pride has been issued a permit to hold its annual Pridefest in Cambier Park, notwithstanding the highly controversial and sexualized nature of this event. The question before this Court is whether the First Amendment affords Naples Pride the right to put a drag performance on display in a public park approximately 100 feet from a children's playground. The Florida legislature has removed this question from the discretion of City officials by enacting Section 255.70, Florida Statutes. *See* Fla. Stat. Ann. § 255.70 (2). Apart from this legal impediment to the City granting the requested permit without limitation, the City's requirement that the drag show be held indoors and out of view of children passes constitutional muster because it is well-settled that the government has a compelling interest in protecting children, *see, e.g.*, *Henry v. Sheriff of Tuscaloosa Cnty.*, --- F.4th ----, 2025 WL 1177671 (11th Cir. Apr. 23, 2025),[2] and that "there is no constitutional interest in exhibiting

---

[2]"Indeed, it 'is indisputable that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling.'" *Henry v. Sheriff of Tuscaloosa Cnty.*, 2025

indecent material to minors." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 438 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1178 (2025) (citing cases). On balance, it is clear that the City's interests far outweigh any countervailing interests or potential harms that may exist. The City's restrictions on the drag performance component of the Naples Pride event are entirely lawful and ought not be enjoined or otherwise disturbed by this Court.

## ARGUMENT

Plaintiff requests that this Court enter an injunction requiring the City of Naples to issue a permit to Naples Pride without any of the following restrictions: "(a) prohibiting the planned drag performance ("Drag Performance") from taking place outdoors on Cambier Park's mainstage; (b) imposing any age restriction on the audience for the Drag Performance; and (c) imposing any permit fee (including, but not limited to, any security fee) that is based in whole or in part on the content, message, or viewpoint of the Event or the Drag Performance." (Dkt. 12).

To establish its entitlement to a preliminary injunction, the Plaintiff must establish that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "In this Circuit, '[a]

WL 1177671, at *24 (11th Cir. Apr. 23, 2025) (quoting *Otto v. City of Boca Raton*, 981 F.3d 854, 868 (11th Cir. 2020) (cleaned up)).

preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Id.* Naples Pride has failed to establish its entitlement to a preliminary injunction.

**A.     Naples Pride Is Unlikely to Prevail on the Merits.**

**1.     The City of Naples Is Prohibited by State Statute from Issuing a Permit for a Drag Show to Be Held in View of Minors.**

Section 255.70, Florida Statutes expressly prohibits the City of Naples from issuing the requested permit to Naples Pride. It reads:

> 255.70    Public permitting.—
> (1)    As used in this section, the term "governmental entity" means any state, county, district, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, or corporation or business entity acting on behalf of any public agency.
> (2)    A governmental entity may not issue a permit or otherwise authorize a person to conduct a performance in violation of s. 827.11.[3]

---

[3] 827.11    Exposing children to an adult live performance.—
(1)    As used in this section, the term:
(a)    "Adult live performance" means any show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it:
1.    Predominantly appeals to a prurient, shameful, or morbid interest;
2.    Is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and
3.    Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.
(b)    "Knowingly" means having general knowledge of, reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both:
1.    The character and content of any adult live performance described in this section which is reasonably susceptible of examination by the defendant; and
2.    The age of the child.
(2)    A person's ignorance of a child's age, a child's misrepresentation of his or her age, or a bona fide belief of a child's consent may not be raised as a defense in a prosecution for a violation of this section.
(3)    A person may not knowingly admit a child to an adult live performance.

(3)  If a violation of s. 827.11 occurs for a lawfully issued permit or other authorization, the individual who was issued the permit or other authorization commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. Ann. § 255.70.

Plaintiff may argue that this statute has been enjoined by another judge in this District in *HM Florida-ORL, LLC v. Griffin*, 679 F. Supp. 3d 1332, 1345 (M.D. Fla. 2023). That injunction, which is presently on appeal to the Eleventh Circuit, is worded as follows (in relevant part):

> Defendant Melanie Griffin, in her official capacity as Secretary of the Florida Department of Business and Professional Regulation, is hereby ENJOINED from instituting, maintaining, or prosecuting any enforcement proceedings under the Act until further order of the Court following a trial on the merits of this case.

Such argument fails for multiple reasons.

It is clear that the injunction in *HM Florida-ORL* only enjoins enforcement of the pertinent statutes by one state official and agency, but does not erase or suspend the statute itself. "Federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (citing *California v. Texas*, 593 U.S. 659, 672 (2021)). Thus, the law remains operative and binding on municipalities like Naples unless and until a final judgment invalidates it or the Legislature repeals it. *See, e.g, Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) ("But 'federal courts have no authority to

---

  (4)  A violation of subsection (3) constitutes a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

erase a duly enacted law from the statute books.'" (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)). Municipalities are without authority to defy state law. *See* Fla. Stat. Ann. § 166.021(1).

Moreover, the injunction does not even enjoin enforcement of the statute as against a municipality, because the only enjoined party is the Florida Department of Business and Professional Regulation, but the enforcement of a misdemeanor as provided for by Section 255.70 would be undertaken by the State Attorney General for the jurisdiction in which the alleged crime occurred. *See* Fla. Stat. Ann. §§ 16.01(5) and 27.02(1). And, "[a]s nonparties, the [State Attorneys] are not obliged in any binding sense to honor an incidental legal determination the suit produces." *Jacobson*, 974 F.3d at 1254 (cleaned up).

Plainly, it is unlawful for the City of Naples to issue a permit to Naples Pride that permits a drag show to occur in view of minors. Were the City to do so, it would come under threat of criminal prosecution. Plaintiff's real quarrel is with the State of Florida, and this motion should be held in abeyance until the State is put on notice and has the opportunity to weigh in to defend its statute. Fed. R. Civ. P. Rule 5.1

2. **The City of Naples' Permitting Scheme Passes Constitutional Muster, As Applied.**

Irrespective of whether the state law described in the foregoing section was the impetus for the City's imposition of the now-contested conditions in the permit it granted to Naples Pride, or whether its determination was made purely based upon the guidelines set forth in the City's Special Event Permit Manual (incorporated by Naples, Fla., Code of Ordinances § 46-39(c)), the conditions are lawful. Count 1 of Plaintiff's Complaint is an "as applied" challenge to the City's permitting scheme. This claim will fail. Plaintiff's permit application has been consistently approved by the City, demonstrating that no viewpoint discrimination has been invoked in determining whether a permit shall issue.

a. **Defendants' Requirement that the Drag Performance Be Held Indoors and Limited to Adults Resulted from the City's Non-Discriminatory Application of Its Permit Criteria.**

Naples Pride did not seek a permit to hold its Pridefest event in 2020 or 2021. When Pridefest resumed in 2022, a drag performance was included as part of the event[4] even though the performance was not noted on the permit application, as required. Members of the public observed the drag show and a large public outcry ensued because the drag performance was sexualized and occurred in view of—and even targeted—children. *See* Declaration of Kimberly Collins and attached exhibits. When Naples Pride sought a permit the following year, it was agreed between the

---

[4] Naples Pride alleges that it previously hosted drag performances in conjunction with its Pridefest event. If this occurred, upon information and belief, it was without permission or knowledge of the City or general public.

permit applicant and the City of Naples that, as a condition of issuance of the permit, the drag performance would be held indoors and only adults would be permitted access. This event was held indoors for the last two years without incident or complaint. "Self-censorship is immune to an 'as applied' challenge, for it derives from the individual's own actions, not an abuse of government power." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

Likely spurred on by the ACLU and certainly to tee up this lawsuit it has now filed, Naples Pride decided not to accept an event permit that did not include an outdoor drag show. *See* Pl.'s Mot. Prelim. Inj., Ex. 12, Naples City Council Meeting Tr. 112:6–11 (Jan. 15, 2025). Over the objection of Naples Pride, the Naples City Council approved the event permit with the express conditions to which Plaintiff now objects. *See* Ex. 12, Tr. 113:25–121:19. In other words, as applied, the City of Naples granted Naples Pride a special event permit even when Naples Pride declined. This is the opposite of discriminatory application of the City's special event permitting scheme.

"As-applied" challenges are necessarily determined on a case-by-case basis. *See City of Lakewood*, 486 U.S. at 759. Due to the size and scope of the proposed event, in accordance with the City's Special Event Permit Manual, City Council review and approval of the Naples Pride permit application was required. *See* Pl.'s Mot. Prelim. Inj., Ex. 14 at 3. The City reserves the right to impose conditions on the event to facilitate approval of the permit, *see* Naples, Fla., Code of Ordinances § 46-39 (c)(2), which is what occurred here. The conditions were entirely appropriate and in keeping

with applicable law. In view of all relevant circumstances, it cannot be said that the City applied its special event permit criteria in a discriminatory manner.

### b. The Security Fees Assessed by the City of Naples Do Not Reflect That the City's Permitting Scheme is Unconstitutional, As Applied.

"[F]ees based upon a sliding scale considering the anticipated attendance of the festival are not content-based but, instead, are reasonably related to the expenses of policing the activities in question." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1321 (11th Cir. 2000)("*CAMP*"). Even if some consideration was given to the magnitude of anticipated counter protests, street evangelists, and others who are drawn to Pridefest for activities on the perimeter of the event, this does not necessarily render the permit fees an unconstitutional restriction on Plaintiff's First Amendment expression or association. *See CAMP Legal Def. Fund v. City of Atlanta*, 451 F.3d 1257, 1273–75 (11th Cir. 2006).

### 3. The City of Naples' Permitting Scheme is Constitutional on its Face.

"[A] time, place, and manner regulation [must] contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323–24 (2002). For the City's Special Event permit ordinance and manual incorporated by reference therein to pass constitutional muster, it "must be '(1) ... content neutral, (2) ... narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information.'" *CAMP*, 219 F.3d at 1316 (quoting *Int'l Caucus of*

*Labor Comm. v. City of Montgomery,* 111 F.3d 1548, 1551 (11th Cir. 1997)). The City's permitting scheme meets each of these criteria.

> **a.    The Guidelines Set Forth in the City's Special Event Permit Manual Are Content Neutral.**

In *Thomas v. Chicago Park District*, the seminal case setting the standard for courts to apply in assessing the constitutionality of local ordinances, the United States Supreme Court found the City of Chicago's permitting scheme constitutional where it "may deny a permit only for one or more of the reasons set forth in the ordinance…for example, when the application is incomplete or contains a material falsehood or misrepresentation; when the applicant has damaged Park District property on prior occasions and has not paid for the damage; when a permit has been granted to an earlier applicant for the same time and place; when the intended use would present an unreasonable danger to the health or safety of park users or Park District employees; or when the applicant has violated the terms of a prior permit." 534 U.S. at 323–24. The City of Naples' Special Event Permit Manual sets forth nearly identical criteria. *See* Pl.'s Mot. Prelim. Inj., Ex. 14 at 9.

The Court further observed in *Thomas* that Chicago Park District's event permit ordinance required it to "process applications within 28 days [], and must clearly explain its reasons for any denial []…[a]nd [the criteria] are enforceable on review." 534 U.S. at 323–24. The City of Naples also provides a deadline for submission of completed applications well in advance of the requested event date (90 or 120 days depending on whether City Council review is required, and longer if the review period

includes the summer months) to allow sufficient time for review without jeopardizing the requested date for the event. The inclusion of City Council review and approval by Resolution as part of the process ensures a definite schedule for review (as Council meetings are regularly scheduled and held, and the City's website indicates that applications will be reviewed at the next City Council meeting following receipt of a completed application as verified by the Special Events Committee[5]), as well as public discussion and declaration of the basis for denial or conditions of approval. The City Council performs a quasi-judicial function in reviewing and determining permit applications. *See, e.g.*, *Park of Commerce Assoc. v. City of Delray Beach*, 636 So. 2d 12 (Fla. 1994). The City's process also provides for an additional layer of review - and even expedited review – on First Amendment grounds in the event a special event permit application is denied. *See* Naples, Fla., Code of Ordinances §2-167 *et seq.* Plaintiff chose not to avail itself of this process.

Just as the ordinance evaluated and upheld by the Eleventh Circuit in *CAMP*, 219 F.3d at 1301, the City of Naples' ordinance and incorporated Special Event Permit Manual "applies equally to all festivals of any kind without regard to the content of any message the festival sponsor might convey. The [] Ordinance only distinguishes between various festivals or similar gatherings on the basis of physical attributes, not content." *Id.* at 1317–18. The Court found in that case that because the challenged ordinance "'serves purposes unrelated to the content of expression' and is 'justified

---

[5] Special Events, City of Naples, Fla., https://www.naplesgov.com/parksrec/page/special-events (last accessed Apr. 30, 2025).

without reference to the content of the regulated speech,'…it is content-neutral." *Id.* (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)). This Court should reach the same conclusion here.

Plaintiff's objections to the City's ability to assess security needs fail to recognize that public safety is one of the clearest justifications for permitting-related discretion. Although permitting schemes must be guided by objective criteria, that does not mean officials must ignore real-world variables, such as crowd size or traffic flow. *Cf. Sullivan v. City of Augusta*, 511 F.3d 16, 35 (1st Cir. 2007) (holding that provision of city ordinance requiring applicants for parade permits to pay costs of traffic control by police officers and of clean-up was reasonable time, place, and manner restriction, and thus did not on its face violate protest march organizers' speech and assembly rights, where it was reasonable for city to rely on experienced judgment of its police officers to estimate number of extra officers and vehicles to assign to a particular event). Here, the Manual delegates safety assessments to the Naples Police Department—an agency uniquely positioned to evaluate anticipated crowd conditions, logistical risk factors, and required deployments. That kind of expert assessment is not only appropriate, *see Sullivan*, 511 F.3d at 35, it is essential. Nor does the delegation to law enforcement create the kind of standardless regime struck down in cases like *Bledsoe v. City of Jacksonville Beach*, 20 F. Supp. 2d 1317 (M.D. Fla. 1998), or *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266 (11th Cir. 2021). In those cases, officials had absolute discretion to deny permits or impose sweeping conditions without any guiding principles. Here, the City's fees are based on actual resource allocation—

barricades, personnel, cleanup, and public services—and the City provides detailed cost estimates based on the event's operational profile.

In short, Naples' permitting system is not a blank check for arbitrary governance. It is a structured process aimed at balancing free expression with the City's obligation to maintain public safety, infrastructure, and order.

> **b.** **The Guidelines Imposed by the City's Permit Event Manual Are Narrowly Tailored to Serve a Significant Governmental Interest.**

In the 2023 Ordinance adopting the extensive Special Event Permit Manual, the City of Naples noted it was doing so because "the City desires to formally adopt standards and criteria for Special Events in a Special Events Manual…and approval of this Ordinance is in the best interests of the health, safety, and welfare of the residents of the City of Naples."[6] These interests are significant, and, in fact, paramount among the duties of local government.

"To demonstrate the significance of its interest, the City is not required to present detailed evidence, but is entitled to advance its interests by arguments based on appeals to common sense and logic." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1318 (11th Cir. 2000) (cleaned up). Just as the Eleventh Circuit did in *Coal. For the Abolition*, supra, this court should "find it obvious

---

[6] Agenda Item, Ordinance 2023-___, City of Naples (Sep. 7, 2023), https://legistarweb-production.s3.amazonaws.com/uploads/attachment/pdf/2134982/Ordinance_2023_Special_Events_Manual_by_Resolution_v3.pdf.

that the City has a significant interest in regulating the use of its parks and streets by large groups." *Id.*

Likewise, this Court should find that the City's permitting procedure and criteria are narrowly tailored to serve these significant ends. To persuade the Court of this, "the City need not prove that the [] Ordinance is the least restrictive means of serving them…; the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* quoting *Rock Against Racism,* 491 U.S. at 799, 109 S.Ct. at 2758 (cleaned up). The City easily meets this burden.

To be sure, "a city may not regulate speech because it causes offense or makes listeners uncomfortable, or because it might elicit a violent reaction or difficult-to-manage counterprotests." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1294 (11th Cir. 2021) (cleaned up). But the Supreme Court has made clear that the government has a "compelling interest in protecting the physical and psychological well-being of minors," and that interest "extends to shielding minors" from material "that is not obscene by adult standards." *Sable*, 492 U.S. at 126. The City's policy here reflects that interest. It does not ban drag performances outright. It does not single out any particular viewpoint about "gender." It allows Pridefest to proceed, and permits drag performances to occur—indoors, and before an adult audience. Those limitations serve a clear and legitimate governmental purpose: protecting children from exposure to content that the community may reasonably deem inappropriate, and that is plainly inappropriate as revealed by the pictures and

videos of Plaintiff's previous events. *See* Declaration of Kimberly Collins and attached exhibits. *See also Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (recognizing that the Court's cases "recognize the obvious concern on the part of parents … to protect children—especially in a captive audience—from exposure to sexually explicit, indecent, or lewd speech").

> c.  **The Conditions Imposed by the City on the Special Event Permit Issued to Naples Pride Leave Open Ample Alternative Channels for Communication of the "Information".**

Even if this Court concludes that drag performances constitute expressive conduct worthy of First Amendment protection, Naples Pride has not been altogether barred from hosting a drag show on City property in conjunction with its 2025 Pridefest. Instead, the City is requiring that the event be held indoors, inaccessible by children. These conditions leave open ample alternative channels for the presentation Naples Pride would like to make, rendering the City's permit conditions constitutionally permissible time, place, and manner restrictions.

The Supreme Court "has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel*, 478 U.S. at 684. "The protections of the First Amendment have always adapted to the audience intended for the speech," thus "certain speech, while fully protected when directed to adults, may be restricted when directed towards minors." *James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002). *See also Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) (States may "shield[ ] minors from the influence of [sexual expression] that is not

obscene by adult standards."). Applying these principles, the Sixth Circuit recently upheld a state law designed to safeguard minors from similar potentially harmful performances. *See Friends of George's*, *supra*, 108 F.4th at 433–35.

The First Amendment does not require the City to provide its public spaces for every type of expressive conduct under every condition preferred by the speaker. *See Ward*, 491 U.S. at 791. The City has not run afoul of the Constitution by limiting Naples Pride's drag show to an indoor venue, outside the presence of children.

**B.**   **Plaintiff Will Not Suffer Irreparable Injury if the Requested Preliminary Injunction is Denied.**

To secure a preliminary injunction, a plaintiff must establish that irreparable injury is not only possible, but likely. *See Siegel v. LePore*, *supra*, 234 F.3d at 1176 (per curiam) (noting that a showing of irreparable injury is "the sine qua non of injunctive relief"). Plaintiff is not at risk of injury – irreparable or otherwise – if the requested injunction is not granted. Plaintiff has held its event under the identical conditions contained in the existing permit for this year's event for the last two years without complaint or incident. Also, to the extent any exigent circumstances now exist warranting this Court's review or intervention, they are entirely manufactured by Plaintiff. Plaintiff's permit was issued on January 15, 2025, but, without cause or justification, Plaintiff waited three (3) months to file this action. Plaintiff did not even avail itself of the expedited review process the City Code offers, again evincing that no emergent circumstances exist, further dictating against the issuance of the requested preliminary injunction. *See, e.g., Tiber Lab'ys, LLC v. Hawthorn Pharms., Inc.*, 527 F.

Supp. 2d 1373 (N.D. Ga. 2007); *see also Bus. & Residents All. of E. Harlem v. Martinez*, 2003 WL 21982960, at *3 (S.D.N.Y. Aug. 20, 2003) ("After sleeping on their rights, plaintiffs cannot now be heard to claim irreparable harm.").

While the deprivation of constitutional rights, even for a limited period of time, often satisfies this prong of the preliminary injunction standard, this Court must bear in mind that drag performances are not inherently protected expressive conduct under the First Amendment. Courts recognize that not all performances involving costumes or impersonations necessarily convey a particularized expressive message meriting constitutional protection. *See Spectrum WT v. Wendler*, 693 F. Supp. 3d 689, 702 (N.D. Tex. 2023) (holding drag performances not clearly established as inherently expressive conduct). "Though apparel and attire 'are certainly a way in which people express themselves, clothing as such is not—not normally at any rate—constitutionally protected expression." *Spectrum*, 693 F. Supp. 3d at 702 (quoting *Brandt v. Bd. of Educ.*, 480 F.3d 460, 465 (7th Cir. 2007) (Posner, J.)). "Instead, courts have applied Free Speech protection to manners of dress only when and where the context 'establish[es] that an unmistakable communication is being made.'" *Id.* A reasonable observer cannot understand a drag show as conveying a particularized message. Drag shows are meant to entertain. They are a caricature (and arguably a mockery) of traditional feminine dress and behaviors, involving lip-syncing, dancing, and exaggerated costumes. Such performances may be creative; they may even be fun to some. But Plaintiff can cite to no binding authority holding that drag shows are First Amendment-protected expressive conduct.

Because Naples Pride has failed to demonstrate a likelihood of irreparable harm, its request for a preliminary injunction must be denied. *See Siegel*, 234 F.3d at 1176 ("[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.")

**C.    The City's Interest in Preserving the Status Quo Far Outweighs Any Alleged Harm Plaintiff May Suffer Without the Requested Injunction.**

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)). If this Court ultimately finds that Naples Pride has a constitutional right to host a drag show on the main stage of Cambier Park in downtown Naples in view of children and within 100 feet of a playground, Naples Pride will be granted such a permit for its 2026 Pridefest and beyond. The status quo, however, is what has occurred for the last two years, when the drag show component of the Pridefest was held inside an adjacent building and accessible by adults only.

As can plainly be seen from the photographic and video evidence submitted in connection with the Declaration of Kimberly Collins filed herewith, in 2022, the last time the Naples Pride drag show was held outdoors, the performances were rife with sexual innuendo and children were in attendance. Children were even enticed to participate in the performances and interact with the men dressed as women dancing provocatively. The City's legitimate and compelling interest in protecting minors from

exposure to this lewdness, and in preserving the City's parks for use by resident parents who wish to allow their children to play without exposure to this sort of "expression," far outweighs any countervailing interest.

**D.** **The Requested Injunction Is Contrary to the Public Interest in Maintaining Order and Safety, and Protecting Children from Exposure to Obscene or Otherwise Harmful Material.**

The City of Naples has not run afoul of the First Amendment by conditioning the Naples Pride event permit on the drag show being held indoors and to the exclusion of minors. Although ordinarily, expressive content—even risqué or sexually suggestive art—is protected by the First Amendment, that protection changes dramatically when minors are the intended or foreseeable audience. The Supreme Court has repeatedly held that the government may regulate sexually explicit expression to shield minors, even if that same expression would be protected for adults. *See, e.g.*, *Bethel*, 478 U.S. at 684; *Ginsberg v. New York*, 390 U.S. 629, 637–43 (1968); *Sable*, 492 U.S. at 126. The Sixth Circuit recently reaffirmed this principle in *Friends of George's*, 108 F.4th at 431. There, the court emphasized that there is "no constitutional interest in exhibiting indecent material to minors." *Id.* at 438. Speech that might otherwise be protected for adults can be lawfully restricted when directed toward children, without violating the First Amendment.

## CONCLUSION

For the foregoing reasons, Amici respectfully urge this Court to deny the relief sought by Plaintiff in its entirety.

Dated: April 30, 2025                    Respectfully Submitted,

                                         /s/ Kristina S. Heuser
                                         Kristina S. Heuser
                                         Horatio G. Mihet
                                         Daniel J. Schmid
                                         LIBERTY COUNSEL
                                         P.O. Box 540774
                                         Orlando, FL 32854
                                         (407) 875-1776
                                         court@lc.org
                                         kheuser@lc.org
                                         hmihet@lc.org
                                         dschmid@lc.org

                                         *Attorneys for Amici*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2025, I caused a true and correct copy of the foregoing to be filed electronically with this Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Kristina S. Heuser
Kristina S. Heuser

*Attorney for Amici*
