# Exhibit 16

**From:** Teresa Heitmann <theitmann@naplesgov.com>
**Subject:** Fwd: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly
**To:** Rhodora Moore <rhmoore@naplesgov.com>
**Sent:** February 26, 2023 2:30 PM (UTC-05:00)

Please print this and make a new paper file for Pride event

Teresa Lee Heitmann
Mayor
City of Naples
735 8th Street South – Naples FL 34102
MayorHeitmann@naplesgov.com www.naplesgov.com
Phone: 239-213-1000 | Fax: 239-213-1010

---

**From:** Jay Boodheshwar <jboodheshwar@naplesgov.com>
**Sent:** Saturday, February 25, 2023 9:20:29 AM
**Subject:** Fwd: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly

Dear M&CC,

Each of you received an email from Kristina Heuser this morning regarding the Pride Fest event. This is the same NY attorney who spoke at a council meeting making allegations that were unfounded. See below. PD will present their findings from last year's investigation on Wednesday. Thanks. Jay.

_____

Jay Boodheshwar
City Manager
City of Naples, Florida

Sent from my iPhone

Begin forwarded message:

> **From:** Thomas Weschler <tweschler@naplesgov.com>
> **Date:** February 10, 2023 at 6:22:26 PM EST
> **To:** Jay Boodheshwar <jboodheshwar@naplesgov.com>
> **Cc:** Mari Gallet <mgallet@naplesgov.com>, Chad Merritt <cmerritt@naplesgov.com>
> **Subject: Fwd: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly**
>
> Jay,
>
> NPD conducted a thorough review of the Pride Fest allegations in 2022. Assist Chief Fletcher's in-depth recap of our investigation/findings is included below.
>
> Chief Tom Weschler
> Naples Police Department
>
> ---
>
> **From:** Matthew Fletcher <MFletcher@naplesgov.com>

**Sent:** Friday, February 10, 2023 5:51:04 PM
**To:** Thomas Weschler <tweschler@naplesgov.com>
**Subject:** RE: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly

Chief,

The following was investigated after complaints were received from the Pride Fest in 2022. The complaint received in email forwarded to the Mayor and Council members covers the same topics investigated below.

Results of the Investigation from August 2022.

On Thursday, August 18, 2022, Detective Martinez was assigned the follow-up investigation to a past occurred suspicious incident. Officer Hartman completed the initial report on Wednesday, August 17, 2022. Officer Hartman's report provided the following information:

• Kristina Heuser came to the Naples Police Department lobby to file a police report.
• Heuser complained about the Naples Pride event held in Cambier Park on Saturday, July 9, 2022.
• Heuser stated she was not at the event, but people forwarded her videos from the event.
• Heuser stated she believed the videos reflected Lewd and Lascivious behavior.
• Heuser stated there were men dressed in "drag" or as women, wearing clothing that was "nude or fishnet stockings."
• Heuser stated the clothing was tight fitting in the private areas of the men and was inappropriate in the presence of minors.
• Heuser stated the males were dancing, spreading their legs, and moving in a sexually provocative manner towards or in the presence of minors.
• Heuser stated she believed the conduct she observed through the videos and pictures violated several Florida State Statutes.
• Heuser stated children were invited/enticed to participate in the performance by handing dollar bills to the performers.

Before coming to the police department to file her police report, Heuser spoke at an open forum at City Hall. Detective Martinez created a copy of Heuser speaking and placed it into NPD property and evidence. At the City Council Meeting, Heuser stated the following:

"I am Kristina Heuser. I'd like to briefly address the issue of the Pride Fest that occurred while you were on summer recess. Um, I certainly understand and acknowledge the requirement that equal access be given to different groups to have such public events. However, there are things that occurred there that are very troubling and, in fact, violate the law. Um, and that's what I'm bringing before you today. I didn't attend the event, but members of the community shared videos of things that occurred there on social media and sent them to me personally. Um, because people are very disturbed by this conduct, and what I'm referring to specifically is grown men in G-strings, um, gyrating their male parts in front of children. So however, this is couched or termed by the people who put on the event, it's abhorrent, and it has no place in public. I would say it has no place in civil society at all, but certainly, if people want to hold such events in a private venue that they rent out, sell tickets to, and people choose to go and see that, that's their prerogative. But it shouldn't be something that's put-on display for all children to be exposed to. And it is incumbent upon you as the local elected officials to protect the public morals and to protect the children of the community from this lewd and lascivious conduct. And, um, I recognize that people have different opinions about this, and it might, you might feel that it puts you in an uncomfortable position. But fortunately, the state legislature has put laws in place that make it very clear that this sort of conduct is illegal. So, it's not something that you have to make a judgment call on. It's very clearly stated in our law that this is illegal conduct. Um, I brought this to the State Attorney's Office, and they have acknowledged that there are potential violations of law that occurred based on the video footage that they observed. However, they said that the proper channel is for this to initiate with the local police department. They do the investigation, develop the case file, and then pass it up to the State Attorney's Office. So, it's my intention to go to the police department after I leave here to initiate that process. And I'm asking for your support that you'll direct the police department to conduct the appropriate investigation. Whatever happens from there obviously is left to the discretion of law enforcement and the State Attorney's Office. But at a minimum, it's appropriate for the investigation to be conducted. So, thank you for hearing my comments."

Officer Hartman provided Detective Martinez with a word document from Heuser with all the Florida State Statutes (F.S.S.) that Heuser believes were violated during the "drag show." Heuser believes the following

F.S.S. were violated:

• 800.04 Lewd or Lascivious offenses committed upon or in the presence of persons less than 16 years of age. Specifically, subsection (7) "Lewd or Lascivious Exhibition."

• 800.03 Exposure of Sexual Organs.

• 800.02 Unnatural and Lascivious Act.

• 798.02 Adultery, Lewd or Lascivious Behavior.

• 823.01 Nuisance

• 823.05 Places and groups engaged in certain activities declared a nuisance, abatement, and enjoinment.

• 823.13 Places where obscene materials are illegally kept, sold, or used, are declared a public nuisance: drive-in theaters, films visible from public streets or public places.

• 827.071 Sexual Performance by a child – subsections (2) and (3).

• 847.011 Prohibition of certain acts in connection with obscene, lewd, etc., materials.

• 847.013 Exposing minors to harmful motion pictures, exhibitions, shows, and presentations of representations.

Detective Martinez went to the State Attorney's Office and spoke with the attorney that met with Heuser. The State Attorney's Office informed Detective Martinez they never acknowledged "that there are potential violations of law that occurred based on the video footage" Heuser showed them. The State Attorney's Office advised Heuser that if she believed crimes were committed, she needed to report those crimes to the Naples Police Department for investigation.

Detective Martinez watched the videos provided by Heuser. Detective Martinez reviewed each statute and jury instructions for the F.S.S. that Heuser believes were violated by the Naples Pride Event.

For the violations of F.S.S. 800.04 Lewd or Lascivious offenses committed upon or in the presence of persons less than 16 years of age. Specifically, subsection (7) "Lewd or Lascivious Exhibition." To prove this statute, the following four elements must be met.

1. The defendant intentionally masturbated, or intentionally exposed his/her genitals in a lewd or lascivious manner, or committed a sexual act, or sadomasochistic abuse, or sexual bestiality, or simulation of any act involving sexual activity that did not involve actual physical or sexual contact with the victim.

2. The act was committed in the presence of the victim.

3. At the time of the offense, the victim was under the age of 16 years.

4. At the time of the offense, the defendant was 18 years of age or older.

The following definitions were provided within Florida jury instructions for the above statute: "Lewd and Lascivious" mean the same thing: wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing the act. "Sexual Activity" means the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual activity does not include an act done for a bona fide medical purpose. "Sadomasochistic abuse" means flagellation or torture by or upon a person or the condition of being fettered, bound, or otherwise physically restrained for the purpose of deriving sexual satisfaction from inflicting harm on another or receiving such harm oneself. "Sexual bestiality" means any sexual act between a person and an animal involving the sex organ of the one and the mouth, anus, or vagina of the other.

After reviewing the video provided by Heuser, Detective Martinez determined the incident did not meet the elements of the statute. A juvenile victim or guardian of a juvenile victim has not come forward reporting the incident or wanting to press charges. The "drag show" participants did not complete any action listed in element "1." For elements 2 and 3, a specific victim would need to be identified, of which none have come forward. The 4th element is not applicable because the above statute does not apply to the event.

For the violation of F.S.S. 800.03 Exposure of Sexual Organs. To prove this statute, the following four elements must be met.

1. The defendant exposed or exhibited his/her sexual organs.
2. The defendant did so in public on the private premises of another so near the private premises of another as to be seen from those private premises.
3. The defendant intended the exposure or exhibition of his/her sexual organs to be in a vulgar, indecent,

lewd, or lascivious manner.
4. The exposure or exhibition of the sexual organs was in a vulgar, indecent, lewd, or lascivious manner.

After reviewing the video provided by Heuser, Detective Martinez determined the incident did not meet the elements of the statute because there was no visible nudity or exposed genitals by any of the individuals involved at the event.

For the violation of F.S.S. 800.02 Unnatural and Lascivious Act. To prove this statute, the following two elements must be met.

1. The defendant committed an unnatural and lascivious act with the victim.
2. The act was unnatural and lascivious.

The following definitions were provided in the Florida jury instructions for the statute: "Unnatural" means not in accordance with nature or with normal feelings or behavior. "Lascivious" means a wicked, lustful, or unchaste, licentious, or sensual intent on the part of the person doing an act.

After reviewing the video provided by Heuser, it was determined the incident did not meet the elements of the statute because the event was permitted to take place by Naples City Council. It also did not meet the elements because a "drag show" does not fall under unnatural or lascivious acts. The way the individuals were dressed was no more revealing than being in a bathing suit at a public pool or beach.

For the violation of F.S.S. 798.02 Adultery, Lewd or Lascivious Behavior. To prove this statute, it must be determined if any man or woman, married or unmarried, engages in open and gross lewdness and lascivious behavior.

The following definition was provided in the Florida jury instructions for "Lewd and Lascivious": wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing the act. After reviewing the video provided by Heuser, it was determined the incident did not meet the statute because the "drag show" did not fall under the norms of lewd or lascivious acts.

For the violation of F.S.S. 823.01 Nuisance, it must be determined that all nuisances tend to annoy the community, injure the health of the citizens in general, or corrupt public morals. The statute defines "Nuisance" as any interference with reasonable use and enjoyment of land, including, but not limited to, noise, smoke, odors, dust, fumes, particle emissions, or vibration. The term also includes all claims that meet the requirements of this definition, regardless of whether the plaintiff designates those claims as brought in nuisance, negligence, trespass, personal injury, strict liability, or other tort.

After reviewing the video provided by Heuser, it was determined the incident did not meet the threshold of probable cause. The event was permitted to take place in a city park by Naples City Council. Approximately 15 to 20 law enforcement officers between the Naples Police Department and the Collier County Sheriff's Office provided security for the event, which was attended by approximately two to three thousand people. No one reported the event as a nuisance to any of the officers in attendance, and no one who was in attendance came forward to report the event as a nuisance. Heusen does not reside in the city, did not attend the event, cannot show any personal damages, and received word about the event participants through media and acquaintances. The nuisance was not reported while the event was taking place, the event was over by the time Heusen reported it, and the point is now moot.

For the violation of F.S.S. 823.05, places and groups engaged in certain activities declared a nuisance, abatement, and enjoinment. To prove this statute, it must be determined that F.S.S. 823.01 "Nuisance" is met. Detective Martinez explained in the previous paragraph why F.S.S. 823.01 "Nuisance" is not met, and the same reasoning can be applied to this statute.

For the violation of F.S.S. 823.13, places where obscene materials are illegally kept, sold, or used declared a public nuisance, drive-in theaters, films visible from public streets, or public places. The statute reads as follows:

(1) Any store, shop, warehouse, building, vehicle, ship, boat, vessel, aircraft, or any place whatever, which is visited by persons for the purpose of unlawfully purchasing or viewing any obscene material or performance as described in chapter 847, or which is used for the illegal keeping, selling, or delivering of the same, shall be deemed a public nuisance. No person shall keep or maintain such public nuisance or aid and abet another in keeping or maintaining such public nuisance.

(2) It shall be unlawful and is hereby declared a public nuisance for any ticket seller, ticket taker, usher, motion picture projection machine operator, manager, owner, or any other person connected with or employed by any drive-in theater in the state to knowingly exhibit, or aid or assist in exhibiting, any motion picture, slide, or other exhibit which depicts nudity which is harmful to minors as described in s. 847.013, if such motion picture, slide, or other exhibit is visible from any public street or public place other than that place intended for the showing of such motion pictures, slides, or other exhibits.

After reviewing the video provided by Heuser, it did not meet the threshold of probable cause. F.S.S. 823.13 is defined by F.S.S. 847 and 847.013 with the following definitions for "adult entertainment establishment, adult bookstore, adult theater, special cabaret, unlicensed massage establishment, child pornography, deviant sexual intercourse, harmful to minors, masochism, nudity, obscene, sadism, sadomasochistic abuse, sexual battery, sexual bestiality, sexual conduct, sexual excitement, sexually-oriented material, and specific sexual activities." The event did not fall under any of the definitions; therefore, F.S.S. 823.13 does not apply.

For the violation of F.S.S. 827.071, Sexual Performance by a child, Heuser specifically stated subsections (2) and (3). Subsections (2) and (3) read as follows:

(2) A person is guilty of the use of a child in a sexual performance if, knowing the character and content thereof, he or she employs, authorizes, or induces a child less than 18 years of age to engage in a sexual performance or, being a parent, legal guardian, or custodian of such child, consents to the participation by such child in a sexual performance.

(3) A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he or she produces, directs, or promotes any performance which includes sexual conduct by a child less than 18 years of age.

After reviewing the video provided by Heuser, it was determined the incident did not meet the above statute because no children were involved in any of the acts described by the statute or observed participating in the event. The video shows children with their parents or guardians in attendance at the event, not participating in the event. The event does not fall into any of the acts described in the statute.

For the violation of the last two statutes listed:

- 847.011 Prohibition of certain acts in connection with obscene, lewd, etc., materials and
- 847.013 Exposing minors to harmful motion pictures, exhibitions, shows, presentations of representations,

It was determined the incident did not meet the above statute because F.S.S. 847 and 847.013 provide the following definitions for "adult entertainment establishment:

- adult bookstore, adult theater, special cabaret, unlicensed massage establishment, child pornography, deviant sexual intercourse, harmful to minors, masochism, nudity, obscene, sadism, sadomasochistic abuse, sexual battery, sexual bestiality, sexual conduct, sexual excitement, sexually oriented material, and specific sexual activities."

The event did not fall under any of the definitions listed in the statutes. The video provided by Heuser does not show any act that falls under these two statutes.

On Thursday, August 18, 2022, Detective Martinez conducted a recorded phone interview with Heuser to explain why no crimes were committed at the Naples Pride Event. Heuser informed Detective Martinez he was wrong and advised she would conduct more research to explain why the ten statutes listed above were violated.

On Wednesday, August 24, 2022, Detective Martinez received a phone call from Kathy Lowers. Lowers stated Heuser told her she needed someone in attendance to file a complaint with the police department. Lowers stated she was at the Naples Pride Event and wanted to make a complaint. Lowers stated she understands the "drag show" might not have broken any laws, but she feels a complaint should be made. Detective Martinez instructed Lowers to speak at City Council's open forum and express her complaint. Lowers stated she was more concerned about the marijuana vendor selling "weed" at the event. Lowers stated officers went and spoke to the vendor and confirmed they were permitted and not selling any illegal products. The vendors' products are derived from the hemp plant, not the cannabis plant. Lowers stated the vendor lied to the officers on the scene, and she would provide proof.

On Monday, August 29, 2022, Detective Martinez met with Kathy Lowers and Jose Jaramillo in the conference room located in criminal investigations at NPD. The interview was audio and video recorded. Detective Martinez placed the interview into NPD property and evidence. Lowers also completed a written sworn statement that stated the following:

"Two activities I witnessed that I felt were illegal and in need of investigation at the Naples Pride event on July 9, 2022, in Cambier Park:

1. Violation of public decency.

"I witnessed multiple drag queen performances whereby minor children were present and grown men were dancing in an erotic fashion with gyrating hips and I saw several with mostly exposed buttocks

covered just by fishnet stockings. I witnessed hypersexualized dancing meant to groom children into the transgender lifestyle. This even was advertised as 'family friendly.' What I saw was public indecency and the corruption of children."

2. High THC marijuana was on display from a table.

"I have submitted a video where the vendor said it was 37% THC. Then she described the recreational high it gave. Both the city of Naples and Collier County have ordinances against the vending of THC products by marijuana shops. A big sign said, 'no medical marijuana card needed.' I witnessed several young people high – two were incoherent when I spoke to them. Once said he was 19 years old. A bystander told me that he saw several people getting high at a table and showed me this table."

Detective Martinez informed Lowers all the above statutes that Heuser reported to be violated above were researched and investigated. Detective Martinez explained to Lowers that none of the statutory elements were met by the participants of the Naples Pride Event. Detective Martinez informed Lowers just because she morally disagreed with the event or the "drag show" doesn't mean any crimes were committed. Lowers told Detective Martinez he was wrong, and she wanted to file a formal complaint. Detective Martinez told Lowers her complaints about the marijuana stand were already investigated. Detective Martinez stated there were over 20 law enforcement officers at the event between NPD and CCSO.

Detective Martinez explained there was no physical evidence to prove the potency or percentage of TCH in the cannabis/hemp/CBD being sold. Detective Martinez explained there is no patrol level cannabis test kit to determine the percentage of THC in any form of cannabis. Detective Martinez explained the officers working the event didn't find probable cause to make any arrest. Detective Martinez informed Lowers that the city ordinance she believed was violated had a subsection explaining the City Council can waive any City Ordinance with the application of an even permit. The Naples Pride event was a permitted event approved by the City of Naples City Council.

Below is one of the marijuana complaint calls received by NPD the night of the Naples Pride event, on July 9th:

The caller wanted to report that there was a table at the pride fest trying to openly sell marijuana. The caller stated they were a registered vendor and wanted to know who organized this event because she stated this vendor should not have been approved. The caller stated that there were people smoking marijuana openly. She was too busy during the event to speak to an officer and wanted to file a report.

Sergeant Kazmierczak spoke with the caller and completed a short report:

Sgt. Kazmierczak contacted the caller (Ashley), who reported that while at the pride festival, she observed marijuana being sold by employees of the vendor "Weedies World Famous." The caller stated she approached the vendor and asked if the product being sold was CBD, and the female employee stated, "No, it's the flower." The caller assumed this was "marijuana" and is upset that the vendor was approved by the City of Naples to be allowed at the festival where young children are present.

Sgt. Kazmierczak advised the caller that he would contact the business, "Weedies World Famous," 1672 Missouri Ave. Clearwater, FL 33756 (727) 331-1890, regarding their alleged actions while at the festival. After calling the business, Sgt. Kazmierczak spoke with the owner, Justin Tranchita, who stated his business is licensed by the state of Florida (DOACS) to sell hemp-derived products, which are legal.

Tranchita further stated his business does not sell marijuana and was properly permitted by the City of Naples, providing his (DOACS) license and insurance necessary to participate in the festival at Cambier Park. Based on the interview with the caller and interview of the business/vendor owner, Sgt. Kazmierczak was unable to establish any crime being committed. The caller stated she did not witness any sales of the vendor's product and could not confirm that the product was, in fact, marijuana. The caller was advised no further action would be taken by NPD and referred her to city hall for any further action regarding her complaint about the vendor.

It was determined no probable cause existed for the arrest of any person for the alleged crimes. Based on the law enforcement presence at the Naples Pride event, officers received one complaint about marijuana sales, and the complaint was unfounded by Sgt. Kazmierczak. The members of the Naples Police Department or CCSO were not provided with a list of vendors, were not instructed, or had probable cause to inspect/search the vendors prior to or during the event. Conversely, the main purpose of law enforcement officers on the scene for the event was to protect persons from any violent acts and to preserve the peace.

No probable cause existed for any statute violations in reference to pervasive sex acts directed at children. The Naples Police Department did not receive a formal complaint until Mrs. Heuser arrived over five weeks later with a list of alleged offenses. The officers and deputies on the scene reported no offenses. Not one officer or deputy was approached to point out a victim, not one person on the scene advised being

offended, a victim was never identified adult or child, a suspected offender was not identified, and the footage/photos provided failed to capture criminal conduct.



**Matt Fletcher**
**Assistant Chief | Operations**
**Naples Police Department**
**355 Riverside Circle, Naples, FL 34102**
**mfletcher@naplesgov.com | www.naplesgov.com**
**PHONE: 239-213-4807 | FAX: 239-213-4816**

---

**From:** Thomas Weschler <tweschler@naplesgov.com>
**Sent:** Friday, February 10, 2023 2:51 PM
**To:** Matthew Fletcher <MFletcher@naplesgov.com>
**Subject:** FW: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly

I know we addressed these issues in the past.  Please send me the results of our inquiry.

Thanks.



Tom Weschler
Chief of Police
Naples Police Department
355 Riverside Circle, Naples, FL 34102
tweschler@naplesgov.com | www.naplesgov.com/police
PHONE: 239-213-4853 | FAX: 239-213-4854

---

**From:** Jay Boodheshwar <jboodheshwar@naplesgov.com>
**Sent:** February 10, 2023 1:25 PM
**To:** Thomas Weschler <tweschler@naplesgov.com>; Michael O'Reilly <moreilly@naplesgov.com>
**Subject:** FW: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly

Please review and advise if anything below and/or attached causes any concern about a potential violation of state or local law.  Thanks. Jay



**Jay Boodheshwar**
**City Manager**
City Manager's Office
735 8th Street South – Naples FL 34102
Phone: 239-213-1030 | Fax: 239-213-1033
www.naplesgov.com

---

**From:** Ted Blankenship <tblankenship@naplesgov.com>
**Sent:** Friday, February 10, 2023 12:59 PM
**To:** Jay Boodheshwar <jboodheshwar@naplesgov.com>; Chad Merritt <cmerritt@naplesgov.com>
**Subject:** Fwd: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly

FYI

Ted Blankenship
Naples City Council Member

TBlankenship@naplesgov.com

Phone: 239.213.1027

Facebook: "Ted Blankenship, Naples City Council Member"

Begin forwarded message:

> **From:** Kathy <kathy@lookright.com>
> **Date:** February 10, 2023 at 12:55:52 PM EST
> **To:** Mayor Heitmann <MayorHeitmann@naplesgov.com>, Mike McCabe <mmccabe@naplesgov.com>, Terry Hutchison <THutchison@naplesgov.com>, Beth Petrunoff <bpetrunoff@naplesgov.com>, Ted Blankenship <tblankenship@naplesgov.com>, Paul Perry <pperry@naplesgov.com>, Ray Christman <rchristman@naplesgov.com>
> **Subject: Keeping drag queen shows and high THC pot sales OUT of the public parks -- keep Naples family-friendly**

**CAUTION:** This email originated from outside of the City of Naples e-mail system. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Mayor Heitmann and Naples City Council Members:

When a friend of mine was running for Naples City Council not too long ago, I suggested he use a slogan that captured the main concerns of the people of the City of Naples -- we came up with **"Keep Naples Natural and Family Friendly."**

While my friend had to drop out of the City Council race due to a sudden illness, the points stand true – one, people do not want overdevelopment and two, most residents here love the low-crime, low-drug wholesome environment.

It is the latter point that I want to discuss briefly.

**I personally attended the Naples Pride event last July 9, 2022, in Cambier Park**.

While Naples Pride and other organizations have the right to use our taxpayer funded parks, they do not have the right to destroy the family-friendly reputation of the City of Naples.

**I highly recommend you prevent two issues from reoccurring in the parks (and parades) in the City:**

1. **Drag queens**

    I stayed and watched several of these shows. As a mom of six, I was very grieved to see parents pushing kids to participate in something that obviously was introducing adult content regarding sexual lifestyles.

    Polls show that the majority of Floridians support Governor DeSantis' quest to stop the sexualization of children both in the classrooms and by parents bringing them to drag queen shows.

    Even many gays and lesbians object to the takeover of the movement by the radical transgender element that seeks to expose children to drag queens.  These shows tend to start out mild to get their foot in the door, only to end up raunchy.

    **DeSantis just won a blowout election -- because protecting children is what Floridians want, and the City of Naples is more conservative than most of Florida.**

2. **High THC pot sold and used in the park**

    **Both Naples Pride and the marijuana business there that day LIED about the selling of high THC pot; due to the hemp loophole, hemp which is grown at less than .3% THC Delta 9 is then harvested and synthesized in a LAB to be high THC Delta 8 up to 100%!**

    **At the Naples Pride event, I observed groups of young people getting high on pot.**

    Someone I did not know had already called the police, but the pot dispensary simply told the officer the lie that the THC level was ".3%"  because that is technically the THC-9 level, but not the THC-8 level!

    **I then recorded the "registered medical marijuana dispensary" with a sign "No Med Card Needed" telling me they sell up to 37% high THC dope –** in the forms of Delta 8 (hemp high THC pot) – they also were selling Delta 9 and THC-0 (completely synthetic marijuana) – all from a table in the park.  I saw cash exchanged, and no IDs were asked when I was standing there.

    **SEE THE VIDEO HERE: July 9 Cambier Park (rumble.com)**

    **Understand that if you allow ANY medical marijuana dispensary to set up a table in your park, they can sell high THC Delta 8 hemp with NO RULES –because the FL**

**legislature has not yet closed the loopholes. See the attached fact sheet -- MINORS can buy this high THC Delta 8 dope!!! Many states have either totally outlawed Delta 8 or closed the loophole through strict regulation – but there exists a high THC "wild west" situation in Florida.**

Even many of those owners who make money dispensing the medical marijuana cards, like MyFloridaGreen, have on the side hemp Delta 8 THC products they sell. I think a great rule of thumb for ANY group that uses Cambier and other public spaces -- NO HIGH THC DOPE SHOULD BE SOLD IN OUR TAXPAYER FUNDED AREAS.

Please see these additional short videos on what the Delta 8 THC loophole is and the problems we have in Florida:

How is Delta-8 legal cannabis? | NOVA | PBS

Delta 8 products packaged like candy legally sold in Florida (abcactionnews.com)

**It is up to localities to take preemptive action to protect our youth, until the state gets its act together to stop these forms of high THC recreational drugs in our community.**

Record numbers of people want to move to the City of Naples because it is naturally beautiful and its values are family-friendly – please take decisive action to keep it that way.

Thank you,

Kathy Lowers
540 2nd St. SE, Naples, FL 34117
239 -580-7529

NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.

NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.
NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.
NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.
NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to

this office. Instead, you may contact City Hall by phone or in writing.
NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.

NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.
NOTIFICATION TO RECIPIENTS: Under Florida law, e-mails created or received by a government agency are public records. Both the message and the e-mail address it was sent from (unless otherwise exempt under Florida law) may be released in response to a public records request. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this office. Instead, you may contact City Hall by phone or in writing.


Document 43-3 Fi
1242



Document 43-3 Filed 1243

