IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAPLES PRIDE,

                Plaintiff,                Case No. 2:25-cv-00291

v.

CITY OF NAPLES, *et al.*,

                Defendants.

_____/

**PLAINTIFF'S REPLY TO LIBERTY COUNSEL'S AMICUS BRIEF**

Plaintiff Naples Pride respectfully submits this memorandum in reply to the *Amicus* Brief of Liberty Counsel, Chelsea Melone, and Theodore & Kimberly Collins (collectively, "Liberty Counsel"). ECF No. 38 ("*Amicus* Brief"). While Plaintiff supports Liberty Counsel's right to express its views, as explained below, those views are immaterial to the legal issues in this case. Similarly, as explained by Defendants' attorney of record at the time of the permitting decision itself, before this litigation Defendants had no doubt that Section 827.11 of the Florida Code was inapplicable. Finally, contrary to Liberty Counsel and Defendants' contentions, the government may not restrict speech because its content may provoke controversy.

    **A.**    **The Declaration of Ms. Collins Is Irrelevant**

In support of the *Amicus* Brief, Liberty Counsel submits a declaration from Kimberly Collins attaching pictures and video clips that she alleges depict past drag performances at Pridefest. ECF No. 38-1. Ms. Collins "was not in attendance" but "monitored publicly available social media to view materials [purportedly] from the

1

event." *Id.* ¶ 4. Based on these images from social media, Ms. Collins reaches various legal conclusions about the content of the drag performance at past Pridefests. *Id.* ¶¶ 11-12.

Ms. Collins's opinions about events she did not personally witness are not useful to the Court. While evidentiary rules are more lenient at the preliminary injunction stage, to be accepted, evidence must be "appropriate given the character and purpose of the injunction proceeding." *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1360 (S.D. Fla. 2012) (citation omitted). Plaintiff has had no opportunity to question Ms. Collins about this evidence to test its reliability—such as whether the images truly depict past Pridefest performances, and whether they have been digitally altered (as at least one of them appears to have been on its face).

In any event, it is black-letter law that in defending a speech restriction, the government is limited to the actual evidence it considered at the time the restriction was adopted, and there is no suggestion in the record that the Naples City Council ever saw these images and video clips—let alone relied on them in deciding to impose the challenged restrictions. *See Kennedy v. Bremerton School Dist.*, 597 U.S. 507, 543 (2022) ("Government 'justifications' for interfering with First Amendment rights must be genuine, not hypothesized or invented post hoc in response to litigation.").

Moreover, to the extent an obscenity analysis is relevant here, the Court would need to adjudicate whether the planned drag performance—"taken as a whole"—is obscene as to minors. *United States v. Little*, 365 F. App'x 159, 164 (11th Cir. 2010) (quoting *Miller v. California*, 413 U.S. 15, 24 (1973)); *Ent. Software Ass'n v. Blagojevich*,

469 F.3d 641, 649 (7th Cir. 2006) (applying "taken as a whole" approach to obscene-as-to-minors analysis). Ms. Collins' cherry-picked snapshots and short video clips provide no basis to evaluate the 90-minute drag performance "as a whole," especially when presented by a "witness" who did not actually attend the event. ECF No. 38-1 ¶ 3. *See Zenith Int'l Film Corp. v. City of Chicago*, 291 F.2d 785, 789 (7th Cir. 1961) ("The Supreme Court has emphasized that it is as a whole that a work must be judged, not merely by plucking isolated scenes or passages from such work." (citing *Roth v. United States*, 354 U.S. 476, 489 (1957))).

Even considered in isolation, none of the images or video clips comes anywhere close to establishing obscenity as to minors:

- Exhibits A and B appear to be screenshots of a recording of a drag artist performing a gymnastics-like dance. Exhibit S appears to be a video clip of the same performance where the performer does a cartwheel, a split, and then spins their legs and stands. Nothing about the dance is explicitly sexual. Practically identical dances are performed at middle- and high-school football games.

- Exhibits C and D show a drag performer in an outfit far less revealing than swimsuits typically worn on public beaches. Exhibit C shows a child offering the performer a dollar. While nothing about tipping a performer is lewd or sexual, Plaintiff has prohibited tipping of drag performers at Pridefest this year in an attempt to appease those who find it objectionable.

- Exhibits E and F are still images of another drag performance. Exhibit O appears to be a video clip of a part of the performance. There is no nudity, and the performer's dance moves are similar to those seen in music videos.

- Exhibits G through L show drag performers, at times holding hands with children. There is no nudity. Exhibit L includes the word "booty" as part of a pun on the phrase "heavy duty," and Exhibit K shows a performer with the words "Tara Newhole" apparently digitally superimposed onto the image. None of these words deprive public performances of First Amendment protection. *See B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293 (3d Cir. 2013) (en banc) (affirming injunction of school policy prohibiting "I heart boobies" bracelets; noting that the word "boobies" is "not plainly lewd," even

3

as to minors); *Baker v. Glover*, 776 F. Supp. 1511 (M.D. Ala. 1991) (holding that bumper sticker reading "How's My Driving? Call 1-800-EAT-SHIT" was not obscene as to minors because it was a "parody" or "satir[e]" and therefore had comedic value).

- The remaining exhibits are short video clips, purportedly depicting drag performances at past Pridefests. Again, there is nothing lewd depicted and the performers are clothed in attire less revealing than one-piece bathing suits.

None of these images or video clips depicting a few cherry-picked moments of a 90-minute performance support a finding that the drag performance this year will be obscene as to minors—especially given the performance's undisputed political and social value as pro-LGBTQ activism and commentary on societal gender roles. ECF No. 12-5 ¶¶ 4-5. As Plaintiff has noted, the Naples Police Department reviewed these same (or similar) images and video clips at the request of Liberty Counsel's attorney, Ms. Heuser, and concluded that they were not "lewd" and violated no laws. ECF No. 43 at 2-3; ECF No.12-19. Liberty Counsel does not even attempt an actual obscenity analysis in its brief. Repeating the words "lewd" and "sexual" in conclusory fashion is not legal argument.

### B. The Florida Drag Law Is Irrelevant and Unenforceable

Liberty Counsel and Defendants both argue that the City of Naples is prohibited from issuing the requested permit under Florida Law. ECF No. 38 at 5; ECF No. 39 at 31. Liberty Counsel cites Section 255.70 of the Florida Code, which prohibits a government entity from issuing a permit "to conduct a performance in violation of [Section] 827.11." *Amicus* Brief at 5. Section 827.11, in turn, prohibits "[e]xposing children to an adult live performance." This argument is unavailing for three reasons.

4

First, this Court already found Section 827.11 unconstitutional and enjoined its enforcement. *See HM Florida-ORL, LLC v. Griffin*, 679 F.Supp.3d 1332, 1345 (S.D. Fla. 2023). The injunction applies broadly; the statute is unenforceable against anyone. *See HM*, 2023 WL 11257409, at *3 (M.D. Fla. July 19, 2023) ("To limit Defendant's enforcement of the Act only to Plaintiff would subject everyone else in Florida to the chilling effect of a facially unconstitutional statute."); *see also Griffin v HM Florida-ORL, LLC*, 144 S. Ct. 1, 1 (2023) (rejecting challenge to injunction that "prohibits state enforcement of the law not only against Hamburger Mary's but also against other entities that are non-parties").

Second, Defendants' attorney of record—Naples City Attorney Matthew McConnell—was clear at the time Defendants made the challenged decision on Plaintiff's permit: "I heard references to 827.11 and arguments that it's still effective, even though a federal court found it unconstitutional and the Supreme Court decided not to take it up." ECF No. 12-18 at 31. Mr. McConnell noted: "I don't agree with that. I think it is unconstitutional." *Id.* He also said that Naples does not "have to abide by" this unconstitutional and enjoined statute. *Id.* He stated that "if [Naples] got sued over it, I would just file[] judicial notice of this federal opinion which already deemed it unconstitutional." *Id.*

Again, "[g]overnment justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented post hoc in response to litigation." *Kennedy*, 597 U.S. at 543 n.8. Defendants' own attorney stated at the time of the relevant government action that Naples does not "have to abide by" Section 827.11.

5

ECF No. 12-18 at 31. The law therefore could not have been the actual reason why Defendants adopted the challenged restrictions, and they cannot claim that the law compels these restrictions now, on a "post hoc [basis] in response to litigation." *Kennedy*, 597 U.S. at 543 n.8.

Third, Section 827.11 simply does not apply to the drag performance at Pridefest, which does not "in whole or in part, depict[ ] or simulate[ ] nudity, sexual conduct, sexual excitement, or specific sexual activities . . . lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts." Fla. Stat. § 827.11. As the Naples Police Department already concluded, this type of content is not present in the drag performances at Pridefest. ECF No. 12-19.

Further, Section 827.11 applies only if a performance "[p]redominantly appeals to a prurient, shameful, or morbid interest," and "[t]aken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present." As explained in Plaintiff's opening brief, the drag performances at Pridefest do not appeal (let alone predominantly) to any prurient, shameful, or morbid interest, and they include significant artistic and political value, including for minors. ECF No. 12 at 27-29, 36.

### C. Content-Based Restrictions Are Prohibited

Liberty Counsel not only concedes that Defendants' restrictions on Pridefest are based on its content, but it affirmatively *encourages* such content-based restrictions. Indeed, Liberty Counsel instructs the Court to "not overlook or discount the nature of the 'expression' at issue here" and the "highly controversial and [purportedly]

6

sexualized nature of this event." ECF No. 38 at 3. In other words, Liberty Counsel's position is that restrictions on speech are justified because of the controversial nature of speech. Defendants rely on this argument too, stating that the "government may impose content-based restrictions on speech as a means of 'avoiding controversy that would disrupt' the forum." ECF No. 39 at 18 (quoting *Cornelius v. NAACP Leg. Def. Fund*, 473 U.S. 788, 809 (1985)). That is not correct. *Cornelius* stands for the proposition that when the Government is acting as an employer, it may make content-based restrictions in the workplaces it operates. *Cornelius*, 473 U.S. at 809. That precedent is not relevant here, where the government is acting as a regulator and not as an employer. *See Connick v. Myers*, 461 U.S. 138, 140 (1983) ("[T]he State's interests as an employer in regulating the speech of its employees differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."). As Plaintiff showed in its opening brief, outside the government-as-employer context, content-based restrictions are prohibited, unless they can satisfy strict scrutiny—and the restrictions here do not. ECF No. 12 at 18-29.

Respectfully submitted,

/s/ Samantha J. Past
Samantha J. Past (FBN 1054519)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
spast@aclufl.org
dtilley@aclufl.org

Jonah M. Knobler*
Thomas P. Kurland*
Joshua M. Goldman*
**Patterson Belknap Webb & Tyler LLP**
1133 Ave. of the Americas
New York, NY 10036
Tel: 212-336-2000
jknobler@pbwt.com
tkurland@pbwt.com
jgoldman@pbwt.com
**Special Admission*
*Counsel for Plaintiff Naples Pride*