# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA FORT MYERS DIVISION

NAPLES PRIDE, INC.,

        Plaintiff,

 v.

CITY OF NAPLES, et al.,

        Defendants.

CASE NO. 2:25-cv-00291-JES-KCD

# EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.....................................................................................ii

BACKGROUND .................................................................................................1

ARGUMENT.....................................................................................................4

I.    Defendants Have Both a Substantial Case on the Merits and Strong
      Likelihood of Success on the Merits...........................................................5

      A.    Pridefest's Special Use Permit Created a Limited Public Forum
            that Is Viewpoint Neutral and Reasonable ....................................5

      B.    The Special Event Program Is a Content and Viewpoint Neutral
            Time, Place, and Manner Program that Satisfies Intermediate
            Scrutiny ............................................................................8

II.   Defendants Will Suffer Irreparable Harm Absent a Stay....................15

III.  Granting a Stay Will Not Substantially Injure Plaintiff .......................17

IV.   The Public Interest Strongly Favors Granting the Stay........................19

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Page(s)**</u>

*Abbott v. Perez,*
    585 U.S. 579 (2018) ..........................................................15, 16, 20

*Adams v. Bordeau Metals Se., LLC,*
    No. 24-11572, 2025 WL 1122444 (11th Cir. Apr. 25, 2025).....................18

*Aspire Health Partners, Inc. v. Aspire MGT LLC,*
    No. 6:24-cv-1578-JSS-EJK, 2024 WL 5169936
    (M.D. Fla. Dec. 19, 2024)...............................................................19

*Bethune-Cookman Univ., Inc. v. Dr. Mary McLeod Bethune*
    *Nat'l Alumni Ass'n,*
    No. 22-14257, 2023 WL 3704912 (11th Cir. May 23, 2023)..............18, 19

*Bloedorn v. Grube,*
    631 F.3d 1218 (11th Cir. 2011)...................................................12, 13

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    596 U.S. 61 (2022) ............................................................................9

*City of Los Angeles v. Alameda Books, Inc.,*
    535 U.S. 425 (2002) ...................................................................13, 15

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) ................................................10, 13, 14, 15

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,*
    219 F.3d 1301 (11th Cir. 2000)......................................................10

*Cornelius v. NAACP Legal Def. & Educ. Fund,*
    473 U.S. 788 (1985) .....................................................................6, 8

*Cousins v. Sch. Bd. of Orange Cnty.,*
    636 F. Supp. 3d 1360 (M.D. Fla. 2022) ........................................19

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.,*
    108 F.4th 194 (3d Cir. 2024)....................................................19, 20

*Family Health Ctrs. of Sw. Fla., Inc. v. Sec'y, Fla. Agency for Health Care*
    *Admin.,*
    No. 2:21-cv-278-SPC-NPM,
    2023 WL 5153484 (M.D. Fla. Aug. 10, 2023) .............................5

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98 (2001) ...................................................................8

*Hill v. Colorado*,
    530 U.S. 703 (2000) ...............................................................12

*In re Sealed Petitioner*,
    106 F.4th 397 (5th Cir. 2024) ................................................20

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024).................................................16

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) .......................................................15, 19

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) ...........................................4, 5

*Maryland v. King*,
    567 U.S. 1301 (2012) ......................................................15, 16

*McDonough v. Garcia*,
    116 F.4th 1319 (11th Cir. 2024) ......................................6, 7, 8

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ...............................................................17

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) .............................................................15

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................4, 5, 19

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    734 F.3d 406 (5th Cir. 2013).................................................15

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    134 S. Ct. 506 (2013) .............................................................19

*Plata v. Schwarzenegger*,
    No. C01-1351-TEH, 2009 WL 1178652 (N.D. Cal. May 1, 2009) ...........18

*Schenck v. Pro-Choice Network of W. N.Y.*,
    519 U.S. 357 (1997) ...............................................................16

*Thomas v. Chi. Park Dist.*,
    534 U.S. 316 (2002) .........................................................12, 13

*TikTok, Inc. v. Garland,*
    145 S. Ct. 57 (2025) ...........................................................................9, 10, 14

*United States v. O'Brien,*
    391 U.S. 367 (1968) .................................................................................13, 14

*United States v. Philip Morris, Inc.,*
    314 F.3d 612 (D.C. Cir. 2003) .......................................................................17

*Vidal v. Elster,*
    602 U.S. 286 (2024) .........................................................................................9

*Wreal, LLC v. Amazon.com, Inc.,*
    840 F.3d 1244 (11th Cir. 2016) ...................................................................19

## Rules and Codes

Fed. R. Civ. P.
    8(a)(1)(A) ............................................................................................................3
    62(d) ....................................................................................................................3

Naples, Fla., Code of Ordinances
    § 46-39(c)...............................................................................................6, 8, 10
    § 46-39(c)(2) ......................................................................................................2

## Other Authorities

*Special Events Permit Manual,* City of Naples, Fla., Parks, Recreation
    and Facilities Dep't (revised Sept. 2023),
    https://perma.cc/KG3H-8YKM ......................................................2, 3, 7

As required by Rule 8 of the Federal Rules of Appellate Procedure, Defendants respectfully move this Court for an emergency stay of its May 12, 2025, opinion and order granting a preliminary injunction, ECF Nos. 66 & 67, pending disposition of an appeal thereof to the United States Court of Appeals for the Eleventh Circuit.

Emergency consideration is warranted because absent an expedited stay, the Naples Pridefest drag show will take place outdoors in Cambier Park on June 7, 2025, and children of any age will be able to attend, thereby irreparably harming the interests of Defendants and the public. A ruling on this emergency motion is requested by May 29, 2025, to allow Defendants the opportunity to seek a stay from the Eleventh Circuit should this Court deny Defendants' motion.

Pursuant to Local Civil Rule 3.01(g), Defendants' counsel conferred with Plaintiff's counsel regarding this motion on May 22, 2025, and Plaintiff's counsel stated that Plaintiff would oppose this motion.

## BACKGROUND

Pridefest has been held annually in Naples since 2017, with a two-year hiatus due to COVID. It is a one-day, private, ticketed event that involves music, speeches, a "kids' zone," private vendors, street closures,

1

and a drag show that lasts approximately two to two-and-a-half hours. *See* Pl.'s Mot. for Prelim. Inj. 5-6, ECF No. 12 ("Pl.'s Mot."); Order 3, ECF No. 66 ("Order"). For the last two years—i.e., 2023 and 2024—Pridefest was held subject to conditions that the drag show be held indoors and exclude children under age 18 from admittance. Order 4, 8-10. The City itself imposed the same conditions for the 2025 Pridefest. *Id*. at 11-12.

The location and age conditions were imposed pursuant to an ordinance enacted by the City of Naples, Ordinance No. 2023-15181, which expressly incorporates the City's Special Event Permit Manual. *Id.* at 6; *see also* NAPLES, FLA., CODE OF ORDINANCES § 46-39(c)(2). The ordinance establishes a permitting process for "any organized public or private activities held or conducted on a temporary basis which are apart from, or in addition to, activities and uses normally associated with and permitted at a specific location." *Id.* As elaborated in the Special Events Manual, the ordinance imposes numerous, non-content-based requirements such as timelines, fees, insurance, waste removal, tent/canopy use, alcohol, parking, portable sanitation, and security. *Special Events Permit Manual* at 2, CITY OF NAPLES, FLA., PARKS, RECREATION, AND FACILITIES DEP'T (revised

2

Sept. 2023), https://perma.cc/KG3H-8YKM ("*Special Events Manual*"); *see also* Order 6.

Special use event permit applications are submitted to a Special Events Committee comprised of department representatives including police, fire, and parks. *Id*. The Committee makes a recommendation to the City Council based on the ordinance's requirements, and the City Council decides whether to approve the permit. *Id*.

The City Council approved the 2025 Pridefest special use permit on January 15, 2025, while imposing the same restrictions that existed in 2023 and 2024. *Id*. at 11; *see also* Pl.'s Mot. 11-12. On April 10, 2025 — approximately three months after receiving its special use permit for the 2025 Pridefest — Plaintiff filed its complaint requesting declaratory and injunctive relief, predicated on its assertion that the age and location conditions violated the First Amendment. Compl. 26-30, ECF No. 1. Two days later, on April 12, 2025, Plaintiff filed its Time-Sensitive Motion for a Preliminary Injunction, Pl.'s Mot. for Prelim. Inj., ECF No. 12, which this Court granted with respect to the location and age conditions on May 12, 2025. Prelim. Inj. 4 ¶¶ 2(a)-(b).

## ARGUMENT

A district court may stay an injunction pending appeal. FED. R. CIV. P. 62(d). The party seeking a stay "must ordinarily move first in the district court" for such relief. FED. R. APP. P. 8(a)(1)(A). In determining whether to issue a stay pending appeal, the court is guided by four factors: (1) whether the stay applicant has made a strong showing of likelihood of success on the merits of its appeal; (2) whether the applicant will suffer irreparable harm absent a stay; (3) whether granting the stay will substantially injure the other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022). The first two factors—likelihood of success and irreparable harm— "are the most critical." *Nken*, 556 U.S. at 434.

The Eleventh Circuit employs a flexible analysis of these four factors whereby "when the balance of equities . . . weighs heavily in favor of granting the stay," the court "relax[es] the likely-to-succeed-on-the-merits requirement" and a stay may be granted if the appeal presents "a lesser showing of a 'substantial case on the merits.'" *League of Women Voters*, 32 F.4th at 1370 (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.

4

1986)); *accord Family Health Ctrs. of Sw. Fla., Inc. v. Sec'y, Fla. Agency for Health Care Admin.*, No. 2:21-cv-278-SPC-NPM, 2023 WL 5153484, at *2 (M.D. Fla. Aug. 10, 2023).

## I.    Defendants Have Both a Substantial Case on the Merits and Strong Likelihood of Success on the Merits

As elaborated below, Defendants' have a "substantial case on the merits," *League of Women Voters*, 32 F.4th at 1370, and can also satisfy the more rigorous standard of showing a strong likelihood of success on the merits. *Nken*, 556 U.S. at 434.

### A.    Pridefest's Special Use Permit Created a Limited Public Forum that Is Viewpoint Neutral and Reasonable

This Court rejected Defendants' argument that the "limited public forum" analysis should apply, concluding that Cambier Park and its bandshell are both traditional public forums. Order 25-26, 29-30. It concluded that the "cases cited by the City as precedent for creating a limited public forum out of a traditional public forum are nowhere near the factual circumstances of this case[,]" yet failed to explain why this is so. *Id.* at 29-30. The Court instead expressed concern that the "City's theories would transform the entire park, apparently forever, because the City has decided to rent out portions of the park for temporary special events." *Id*.

at 30. But that is not so. Rather, through the Special Events program, Naples has created a forum for activities that are "*apart from, or in addition to*, activities and uses normally associated with and permitted at a specific location." NAPLES, FLA., CODE OF ORDINANCES § 46-39(c) (emphasis added). It is *that* forum for *abnormal* activities that is the proper focus of analysis, and recognizing the forum as limited would not somehow transform the park generally into a limited forum. *See Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 801 (1985) (explaining that "in defining the forum we have focused on the access sought by the speaker").

To determine whether a forum is a limited public forum, "the Supreme Court instructs us to look to two features—whether the forum is limited to a specific class of speakers, and whether the forum is limited to speech on specific topics." *McDonough v. Garcia*, 116 F.4th 1319, 1328 (11th Cir. 2024). "If either (or both) is present, we have a limited public forum." *Id*. Moreover, because a "limited public forum" is, by definition, created "for certain groups or for the discussion of certain topics," the government may employ the "same test the Court had offered before for nonpublic forums." *Id*. at 1324. The applicable standard is deferential, and the

6

content-based restrictions inherent in limited public forums will be upheld so long as they are "reasonable and viewpoint neutral." *Id*. at 1328.

Here, through the Special Events program the City has created a forum limited to a certain class of speakers—those who organize "public or private activities held or conducted on a temporary basis which are apart from, or in addition to, activities and uses normally associated with and permitted at a specific location." *Special Events Manual* at 3. Examples of such speakers include those holding art shows, parades, concerts, musical presentations, and festivals, such as Pridefest. *Id*.

The facts here illustrate that the forum is the Special Events program, not the park itself. A private, ticketed event including the sale of alcohol and expected to draw thousands of visitors is not the type of activity normally associated with the day-to-day use of a public park. Pridefest therefore could only be held in the park – or in any other public location – pursuant to the Special Events program created by the City. The mere fact that Pridefest uses Cambier Park does not mean the "forum" is the park itself, as this Court assumed. Instead, as *McDonough* makes clear, a determination of the applicable type of forum is made by looking to the *forum in which speech has been restricted*—there, a city council meeting.

7

*McDonough*, 116 F.4th at 1328. Here, that forum is the Special Events program, not Cambier Park.

The Court failed to apply *McDonough*'s two-pronged definition of "limited public forum" to Naples' Special Events program or apply the relevant standard that attaches thereto—namely, whether the government has restricted speech in a "viewpoint neutral" manner that is reasonable. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001); *McDonough*, 116 F.4th at 1328. Reasonableness is "assessed in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809. As elaborated in subsection I.B below, the location and age conditions imposed on Pridefest under the City's Special Events program are both viewpoint and content neutral and eminently reasonable under the circumstances.

**B.  The Special Event Program Is a Content and Viewpoint Neutral Time, Place, and Manner Program that Satisfies Intermediate Scrutiny**

Even if this case involved a traditional public forum rather than a limited public forum, the Special Events program is a reasonable time, place, and manner regulation that targets neither viewpoint nor content. *See* NAPLES, FLA., CODE OF ORDINANCES § 46-39(c).

8

A law is content-based and subject to strict scrutiny only if it

"'target[s] speech based on its communicative content,'" — i.e., "the topic

discussed or the idea or message expressed." *City of Austin v. Reagan Nat'l*

*Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed v. Town of Gilbert*,

576 U.S. 155, 163 (2015)). A law is viewpoint based if it "targets not merely

a subject matter, but particular views taken by speakers on a subject." *Vidal*

*v. Elster*, 602 U.S. 286, 293 (2024) (internal quotation marks omitted).

Whether a regulation is viewpoint-based or content-based, strict scrutiny

will generally apply for speech in a public forum.

As the Supreme Court recently reiterated, a law may be content

based in two different ways. *TikTok, Inc. v. Garland,* 145 S. Ct. 57, 67 (2025).

First, if a law "on its face" applies "because of the topic discussed or the

idea or message expressed[,]" it is content based. *Id*. Second, if a law is

facially content-neutral but it "cannot be justified without reference to the

content of the regulated speech or was adopted by the government because

of disagreement with the message the speech conveys," it is also content-

based. *Id*. (cleaned up).

If a regulation of the time, place or manner of speech is content

neutral, strict scrutiny is inapplicable; the appropriate standard is an

"intermediate level of scrutiny" pursuant to which the law will be upheld
"if it advances important governmental interests unrelated to the
suppression of free speech and does not burden substantially more speech
than necessary to further those interests." *Id*. at 67 (quoting *Turner Broad.
Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) ("*Turner II*")); *City of Renton v.
Playtime Theatres, Inc.*, 475 U.S. 41, 46 (1986).

Here, Naples' ordinance is content and viewpoint neutral on its face.
It does not discriminate against any topics, ideas, or messages, much less
the views taken by speakers on any subject. It applies broadly to "any
organized public or private activities held or conducted on a temporary
basis" that are not uses "normally associated with and permitted at a
specific location." NAPLES, FLA., CODE OF ORDINANCES § 46-39(c); *see also
Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301,
1317-18 (11th Cir. 2000) (noting that a festival ordinance that "applies
equally to all festivals of any kind" is content neutral). Accordingly, the
ordinance can be content based only if it "cannot be justified without
reference to the content of the regulated speech or was adopted by the
government because of disagreement with the message the speech
conveys." *TikTok*, 145 S. Ct. at 67 (cleaned up). And it clearly can be so

justified—the ordinance is based on a desire to ensure the orderly and safe use of public facilities for Special Events.

The Court nevertheless held that the *application* of the ordinance to impose location and age conditions on Pridefest was viewpoint and content based, even if the ordinance generally is not. But, as the Court acknowledged, the City argues that the conditions in question were based on security concerns. *See* Order 33-34. The Court did not question that premise—indeed, the Court acknowledged that "in recent years there have been far too many horrific events at public gatherings across the nation and globe." *Id.* at 5. Rather, the Court reasoned that the location condition is viewpoint and content based regardless because "[i]t is the perceived expressive conduct of the drag performance, and the potential hostile reaction it may engender in others, that caused the City to restrict the drag performance to the inside of a small building." *Id.* at 33. (This reasoning also would apply equally to the age restriction.) But there is no indication that the City would have done anything different in response to *different* content or *different* viewpoints that created similar security risks. One could imagine any number of events that could create similar security risks and thus lead to similar safety-based conditions, such as a pro-Palestine or pro-

11

Israel rally, or a pro-life event featuring graphic portrayals of aborted fetuses. The key point is that it is the need to provide appropriate security, not the underlying content or message, that would ultimately justify safety conditions in such situations. It is odd indeed to posit that conditions designed to *protect* an event and its participants evince *hostility* to the event or its message.

Plaintiff relatedly tries to force application of the ordinance into the content or viewpoint box by asserting that the imposition of location and age conditions constitutes a "hecklers' veto." Order 16. But there cannot be a hecklers' veto when "[n]o speaker is silenced[] [a]nd no message is prohibited." *Hill v. Colorado*, 530 U.S. 703, 734 (2000). Nothing about Pridefest, its drag show, or its message has been "vetoed"; the only thing that has happened is that Pridefest's drag show has been subjected to a "narrow place requirement," *id.*, and a reasonable age requirement.

"Regulations of the use of a public forum that ensure the safety and convenience of the people are not 'inconsistent with civil liberties but . . . [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend.'" *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002) (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941)); *accord*

12

*Bloedorn v. Grube*, 631 F.3d 1218, 1238 (11th Cir. 2011). *Chicago Park*
reiterated that "a content-neutral permit scheme regulating speech in a
public forum" that is limited "to considerations of public safety and the
like," 534 U.S. at 322-23 (quoting *Niemotko v. Maryland*, 340 U.S. 268, 282
(1951) (Frankfurter, J., concurring)), are consistent with free expression
because they are "a ministerial, police routine for adjusting the rights of
citizens so that the opportunity for effective freedom of speech may be
preserved." *Id.* at 323 (quoting *Poulos v. New Hampshire*, 345 U.S. 395, 403
(1953)).

The same logic underlies the Court's analogous "secondary effects"
doctrine, which recognizes that zoning ordinances restricting the location
of adult bookstores or theaters are subject to a lower level of scrutiny
because their aim is to stop harmful secondary effects on nearby residential
areas, such as crime. *City of Renton*, 475 U.S. at 47; *see also City of Los Angeles
v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002) (plurality opinion). Even
though some city officials may be motivated by a desire to restrict such
businesses' First Amendment rights, *Renton* made clear that such
motivations are irrelevant under *United States v. O'Brien*, which held that

13

> It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive . . . . What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

391 U.S. 367, 383-84 (1968); *see also City of Renton*, 475 U.S. at 48.

Given that application of the Special Events ordinance to Pridefest serves the government's interest in security, intermediate scrutiny is satisfied for Plaintiff's as applied challenge because it means the law "advances important governmental interests unrelated to the suppression of free speech." *TikTok*, 145 S. Ct. at 67 (quoting *Turner II*, 520 U.S. at 189). The only remaining question is whether the law burdens "substantially more speech than necessary to further those interests." *Id*. That, too, is satisfied because the City's interest in security "would be achieved less effectively absent," *id*. at 70 (cleaned up), the challenged conditions and they "allow[ ] for reasonable alternative avenues of communication" by leaving Plaintiff open to use an indoor venue to host its drag show for adult patrons. *City of Renton*, 475 U.S. at 53. Indeed, given the compelling security interests involved here the challenged conditions would satisfy strict scrutiny even if that standard applied.

14

In short, the City of Naples has not used its ordinance "as a pretext for suppressing expression, but rather has sought to make some areas available for [Pridefest's drag show] and [its] patrons, while at the same time preserving the quality of life in the community at large" by restricting the drag show to an indoor facility and individuals aged 18 or older. *Id.* at 54 (cleaned up). While the Court has an "obligation to exercise independent judgment when First Amendment rights are implicated . . . . On the other hand, [it] must acknowledge that the . . . City Council is in a better position than the Judiciary to gather and evaluate data on local problems." *Alameda Books*, 535 U.S. at 440 (plurality opinion) (cleaned up).

## II. Defendants Will Suffer Irreparable Harm Absent a Stay

The government suffers irreparable harm when it cannot enforce its law. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Mem.) (Gorsuch, J., concurring in the grant of stay); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Indeed, "[u]nless that [law] is unconstitutional," an injunction preventing its enforcement "would seriously and irreparably

15

harm the State, and only an interlocutory appeal can protect that State interest." *Abbott v. Perez*, 585 U.S. 579, 602-03 (2018); *see also id*. at 602 n.17. While the Court found that Plaintiff was likely to succeed on the merits of its First Amendment claim, the purpose of the present stay motion is to enable prompt appellate review of that legal conclusion. If that conclusion is in error, Defendants will suffer irreparable harm absent a stay, due to its inability to enforce its laws.

Defendants will also suffer irreparable harm based upon a separate "ongoing and concrete harm" to its general "law enforcement and public safety interests." *King*, 567 U.S. at 1303 (Roberts, J., in chambers). The preliminary injunction frustrates Defendants' basic obligation to further its significant interest in public safety. *See, e.g.*, *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376 (1997) (noting that public safety is significant government interest); *Jeffery v. City of New York*, 113 F.4th 176, 194 (2d Cir. 2024) (It is "beyond cavil that . . . states have substantial, indeed, compelling, governmental interests in public safety." (quotation marks and citation omitted)). Absent a stay, Naples' Pridefest will take place on June 7, 2025, and the City will be unable to impose conditions it reasonably believes are needed to protect Plaintiff, attendees, residents, and children.

16

## III.    Granting a Stay Will Not Substantially Injure Plaintiff

If the stay is granted, Plaintiff will not be substantially injured. A stay will maintain the status quo, allowing Pridefest and its drag show to be conducted pursuant to conditions present in prior years. Plaintiff has not been stopped from conducting the activities it wants to conduct. It received a permit on January 15, 2025, allowing it to hold Pridefest and its drag show in a place and manner that is safe and secure for all. These conditions are identical to those included, without challenge, in both 2023 and 2024.

Any delay caused by a stay cannot cause Plaintiff substantial harm under the facts of this case. "A mere assertion of delay does not constitute substantial harm" because "almost all interlocutory appeals" cause delay. *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). Such delays may also be minimized by an expedited appellate process. *Id*.

More fundamentally, any stay-induced delay cannot cause substantial harm here because Plaintiff inexplicably delayed filing its challenge to the location and age conditions for several *years*. The challenged conditions were first applied by the City in 2023. Plaintiff knew

17

in November 2024 that the City would impose the same conditions for 2025. Order 12. When the City Council formally imposed the location and age conditions two months later, during its January 15, 2025, meeting, Plaintiff then waited an additional *three months* to file its preliminary injunction motion.

Plaintiff's unexplained delay in mounting a constitutional challenge to the location and age conditions shows that Plaintiff will not be substantially harmed by any further stay-induced delay. Indeed, if delay constitutes substantial harm to Plaintiff's constitutional rights, one would expect Plaintiff to seek injunctive relief to vindicate those rights "as soon as possible" rather than waiting more than two years from when the conditions were first applied, and three months from when the conditions were imposed for this year's Pridefest. *Cf. Plata v. Schwarzenegger*, No. C01-1351-TEH, 2009 WL 1178652, at *1 (N.D. Cal. May 1, 2009). Indeed, the Eleventh Circuit has emphasized that a delay of even a few months militates against finding irreparable harm. *Adams v. Bordeau Metals Se., LLC*, No. 24-11572, 2025 WL 1122444, at *4 (11th Cir. Apr. 25, 2025) (per curiam); *Bethune-Cookman Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n*, No. 22-14257, 2023 WL 3704912, at *3-4 (11th Cir. May 30, 2023) (per

18

curiam); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *accord Aspire Health Partners, Inc. v. Aspire MGT LLC*, No. 6:24-cv-1578-JSS-EJK, 2024 WL 5169936, at *13-14 (M.D. Fla. Dec. 19, 2024); *Cousins v. Sch. Bd. of Orange Cnty.*, 636 F. Supp. 3d 1360, 1382 (M.D. Fla. 2022).

The same is true here. Any further delay caused by a stay pending appeal cannot be "substantial" when the Plaintiff has exhibited no urgency in seeking resolution of its constitutional claims.

## IV.    The Public Interest Strongly Favors Granting the Stay

Because the government is a party to this stay motion, the "irreparable harm" factor and the "public interest" factor merge. *Cf. Nken*, 556 U.S. at 435 (Harm to the opposing party and harm to public interest merge when the government opposes the stay.); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 134 S. Ct. 506, 507 (2013) (Mem.) (Scalia, J., concurring in denial of application to vacate stay). As elaborated *supra* Section II, Defendants will suffer irreparable injury if they cannot enforce the law and pursue the government's substantial interest in protecting public security. "There is always a public interest" in executing the law. *Nken*, 556 U.S. at 436; *Labrador*, 144 S. Ct. at 932 (Kavanaugh, J., concurring in the grant of stay). "That is doubly true when federal courts

19

are asked to block states from enforcing their laws." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024); *see also Perez*, 585 U.S. at 602-03; *In re Sealed Petitioner*, 106 F.4th 397, 404 (5th Cir. 2024).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order staying the preliminary injunction pending disposition of their appeal.


DATED: May 22, 2025

David Jadon
(Florida Bar No. 1010249)
ROPER, TOWNSEND & SUTPHEN, P.A.
255 S. Orange Ave., Suite 750
Orlando, FL 32801
(407) 897-5150
djadon@roperpa.com

Andrew William Justin Dickman
(Florida Bar No. 238820)
Matthew Rodrick McConnell
(Florida Bar No. 126161)
Odelsa Flores-Dickman
(Florida Bar No. 345120)
DICKMAN LAW FIRM
809 Walkerbilt Rd., Suite 6
Naples, FL 34110

Respectfully submitted,

/s/ Peter A. Patterson
Peter A. Patterson*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
ppatterson@cooperkirk.com

*Admitted *pro hac vice*

20

(239) 434-0840
andrew@dickmanlawfirm.org
matthew@dickmanlawfirm.org
ody@dickmanlawfirm.org

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF on this 22nd day of May, 2025, to: Samantha J. Past, Esquire, Daniel B. Tilley, Esquire, **AMERICAN CIVIL LIBERTIES, UNION FOUNDATION OF FLORIDA,** 4343 West Flagler Street, Suite 400, Miami, FL 33134, spast@aclufl.org; dtilley@aclufl.org; Anthony J. Wong, Esquire, Jonah M. Knobler, Esquire, Joshua M. Goldman, Esquire, Justin Zaremby, Esquire, Maxwell K. Weiss, Esquire, Thomas P. Kurland, Esquire, **PATTERSON BELKNAP WEBB & TYLER LLP,** 1133 Ave. of the Americas, New York, NY 10036, awong@pbwt.com; jknobler@pbwt.com; jgoldman@pbwt.com; jszaremby@pbwt.com; maweiss@pbwt.com; tkurland@pbwt.com. (*Attorneys for Plaintiff*).

/s/ Peter A. Patterson
Peter A. Patterson

*Counsel for Defendants*