```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

NAPLES PRIDE, INC.,

      Plaintiff,

v.                                   Case No: 2:25-cv-291-JES-DNF

CITY OF NAPLES; NAPLES CITY COUNCIL; TERESA HEITMANN, TERRY HUTCHISON, RAYMOND CHRISTMAN, BETH PETRUNOFF, BILL KRAMER, LINDA PENNIMAN, and BERNE BARTON, in their official capacities as City Council members; NAPLES POLICE DEPARTMENT; and CIRO DOMINGUEZ, in his official capacity as Naples Chief of Police,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of the Second Motion to Intervene (Doc. #114) filed by Chelsea Melone, Theodore Collins, and Kimberly Collins (collectively "Parents") on September 2, 2025. This Court previously denied the Parents' prior motion to intervene in part — as to Parents' request for a one month briefing extension to file a response to Plaintiff's preliminary injunction motion — and took the remainder of the motion to intervene under advisement. (Doc. #65.) On July 24,

2025, the Court denied the remainder of the Motion as moot (Doc. #100), noting that Parents' asserted interests did not appear to extend to the later phases of this case. Nevertheless, the Court gave Parents leave to file another motion within 21 days of the filing of Plaintiff's Amended Complaint if such a complaint was filed. Plaintiff filed an Amended Complaint (Doc. #106) on July 29, 2025, and Parents filed the instant motion to intervene. For the reasons set forth below, Parents' motion is DENIED.

## I.

Since 2017, Plaintiff has hosted a festival known as "Pridefest" each June (except for 2020 and 2021 due to the COVID-19 pandemic). Pridefest's main event is, as described by Plaintiff, "a family-friendly drag performance lasting between two and two-and-a-half hours." (Doc. #106, ¶ 54.) For Pridefest's first four years (2017, 2018, 2019, and 2022), all events, including the drag performance, took place outdoors on the mainstage in Cambier Park in downtown Naples. (Id.) In order to hold Pridefest in Cambier Park, Plaintiff must apply for and receive a permit. (Id., ¶ 67.) When Plaintiff applied for a Pridefest permit in early 2023, Defendants informed Plaintiff that the drag performance must be moved indoors and restricted to adults (18 years or older) or the permit would be denied. (Id., ¶¶ 97-100.) Thus, the 2023 and 2024 Pridefest drag performances took

2

place indoors and subject to the adult-only restriction. (Id., ¶¶ 103, 107.)

In 2025, Defendants once again conditioned issuance of the Pridefest permit on an adult-only and indoors-only drag performance, in addition to an estimated $30,697.50 security fee. (Id., ¶ 114.) Plaintiff sued in federal court challenging the constitutionality of the permit restrictions. (Doc. #1.) The undersigned issued a preliminary injunction at Plaintiff's request, which was stayed by the Eleventh Circuit. Thus, the June 2025 drag performance was held indoors and subject to the adult-only restriction.

Plaintiff has now filed an Amended Complaint (Doc. #106) seeking to have the family-friendly portion of the June 2026 Pridefest outside in Cambier Park without the adults-only restriction and with a more reasonable security fee.

Parents all have young children "who frequently make use of the playground at Cambier Park" and claim that an outdoor drag performance would harm their interest in "uninterrupted use of the Cambier Park playground without the forced viewing of men in drag dancing in a sexually suggestive manner." (Doc. #114, pp. 4, 10.) The Court notes that on October 30, 2025, while the instant motion remained pending, the City announced the closure of Cambier Park "until further notice." See Laura Layden, City to Demolish Most

3

of Cambier Park's Playground in Naples, THE NEWS-PRESS, Nov. 7, 2025.

## II.

**A. Intervention as of Right**

Parents assert they must be allowed to intervene because they satisfy the requirements of Federal Rule of Civil Procedure 24(a), which sets the bounds to intervene as matter of right. Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302 (11th Cir. 2008). As the language of that Rule indicates, a court must allow a movant to intervene if (1) its motion is timely, (2) it has an interest relating to the property or transaction underlying the action, (3) disposition of the case, as a practical matter, may impede or impair its ability to protect its interest, and (4) the parties will not adequately protect its interest. Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 910 (11th Cir. 2007). Putative intervenors such as Parents "bear the burden of proof to establish all four bases for intervention as a matter of right." Burke v. Ocwen Fin. Corp., 833 Fed. Appx. 288, 291 (11th Cir. 2020) (citing Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Parents assert (1) that they moved to intervene at the earliest possible opportunity in the litigation, (2) that they have an interest in the litigation because they (and their children) "will be deprived of peaceful enjoyment of the park

4

should the Court grant Plaintiff its requested relief," (3) their interests will be impeded or impaired should Plaintiff be permitted to hold its drag show outdoors in conjunction with its Pridefest event, and (4) that Parents' interests are inadequately represented by the City of Naples because their seminal interest — the harm to minors posed by Plaintiff's drag performance — is left entirely unspoken by the City's approach to this litigation. (Doc. #114, pp. 3-9.)  Except for the timeliness factor, Plaintiff disagrees with Parents' analysis on each consideration.

As stated previously, to succeed on their motion to intervene as a matter of right, Parents must prove that their interests are inadequately represented by the parties.  The Court's analysis is guided by the following principles:  First, a court will presume that a proposed intervenor's interest is adequately represented where an existing party in the litigation pursues the same ultimate objective as the party seeking intervention. Burke, 833 Fed. Appx. at 293 (quoting Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 215 (11th Cir. 1993)).  If such a finding is made, representation is adequate in the absence of collusion, adversity of interests, or nonfeasance on the part of that existing party. Fed. Sav. & Loan Ins. Corp., 983 F.2d at 215 (quoting United States v. United States Steel Corp., 548 F.2d 1232, 1236 (5th Cir. 1977)).  Finally, although the burden to make an

5

inadequacy showing is generally treated as minimal, see Winemiller ex rel. T.W. v. Judd, No. 8:13-CV-2995-T-17EAJ, 2015 WL 3901623, at *5 (M.D. Fla. June 24, 2015) (citing Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n. 10 (1972)), where the existing party is, as here, a government entity, the party seeking intervention must make a strong showing of inadequate representation because courts must "presume that [a] government entity adequately represents the public." Burke, 833 Fed. Appx. at 293 (quoting FTC v. Johnson, 800 F.3d 448, 452 (8th Cir. 2015)).

Here, there is no distinction between Defendants' and Parents' interest in the outcome of the case. Both seek to defend the challenged permitting restrictions and ensure that the drag performance remains an indoor and adults-only show. Parents nevertheless insist that Defendants do not adequately represent their interest in this suit. Parents assert that Defendants' litigation strategy – e.g. that the Pridefest permit restrictions are reasonable and viewpoint neutral, and therefore constitutionally appropriate so long as the Court determines (as Defendants contend) that Cambier park is a limited public forum – leaves their seminal interest in shielding their children from such a performance unspoken. (Doc. #114, p. 8.) The Court disagrees.

Parents' arguments on this point are largely rooted in Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989). Chiles involved a temporary detention facility in Dade County, Florida used by the federal government to house large numbers of detainees, including convicted felons. Id. at 1201. After several felons rioted and escaped from the detention facility, a Florida Senator brought suit, alleging that the facility was run illegally. Id. at 1202. Pertinently, the Chiles Court examined whether two groups of intervenors' rights would be adequately represented by Dade County, the local government body responsible for the area in which the facility was located. The first group of intervenors, non-felon detainees, asserted that the government's practice of housing felons with nonviolent detainees violated minimum prison standards and placed them in imminent risk of harm. Id. at 1214. The second group of intervenors, local homeowners and a homeowner association asserted an interest in the prevention of riots and escapes from the facility and the protection of nearby residents. Id.

Dade County, for its part, alleged that it had been forced to supply additional police and emergency resources at a substantial cost following the riot and that it continued to maintain elevated police response capacity as a result of the clear and present danger posed by the facility. Id. at 1209. Although Dade County's

7

litigation strategy largely focused on the costs imposed by the facility, the Court held that the homeowners and Dade County had <u>identical interests</u> in the suit: the prevention of escapes from the facility and the protection of nearby residents. <u>Id.</u> at 1215. As for the non-felon detainees, however, the <u>Chiles</u> Court concluded that detainees' interests in the suit were merely <u>similar</u> to those of the County since they had asserted legal rights of their own. <u>Id.</u> at 1214. Thus, because the focus of the County's litigation was more likely to be on those outside of the detention center's walls rather than those within it, the Court held that the detainees' interests were not adequately represented by the parties and granted intervention as of right under Rule 24(a)(2). <u>Id.</u> As an Eleventh Circuit Panel later explained in <u>Daker v. Owens</u>, the differing litigation strategies between the County and the detainees in <u>Chiles</u> mattered only because the intervenors' interest was "similar to, but not identical with," the plaintiff. 806 Fed. Appx. 881, 888 (11th Cir. 2020) (quoting <u>Chiles</u>, 865 F.2d at 1215).

Here, Parents seek to shield their minor children from exposure to Plaintiff's drag performance. Defendants have articulated an identical interest in protecting residents throughout the proceeding. For example, in their Joint Motion to Dismiss, Defendants explain that "[e]xcluding children also

8

facilitates security by ensuring that particularly vulnerable members of the public would not be present in a high-threat environment[.]" (Doc. #113, p. 9.) Stated somewhat differently, both Defendants and Parents seek to protect residents (including children) from the perceived consequences attendant to an outdoor drag performance.

The Court agrees with Plaintiff that Parents are far more akin to the homeowner intervenors in Chiles than the non-felon detainees. Both are concerned with the safety and wellbeing of residents well within the City's protective ambit. That Parents may seek to impose a different litigation strategy in advancing that interest is, under these circumstances, inapposite to this Court's analysis. See e.g. Daker, 806 Fed. Appx. at 883 ("[B]ecause [the proposed intervenor] and [an existing party's] interests are perfectly aligned, [the proposed intervenor's] interest in the outcome of the case . . . will be adequately represented by [the existing party] notwithstanding any differences in litigation strategies each party may employ." (emphasis added)).

Having determined that Defendants (as existing parties to this litigation) seek the same ultimate objective as parents in the outcome of this case, the Court must presume that in the absence of collusion, adversity of interests, or nonfeasance on

9

the part of Defendants, Parents' interests are adequately represented by the existing parties. It is apparent from the pleadings and record in this case that no collusion has been shown between Plaintiff and Defendants, Defendants do not carry an interest adverse to Parents, and Defendants have not failed in the fulfillment of their duty to pursue this litigation. Parents have not asserted otherwise. Accordingly, Parents have failed to make the strong showing required to prove that their interests are inadequately represented in this case, and thus have not met the requirements to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a).[1]

### B. Permissive Intervention

In the alternative, Parents maintain that the Court should grant permissive intervention under Federal Rule of Civil Procedure 24(b). According to Rule 24(b)(1)(B), on timely motion, a court may permit someone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, "the

---

[1] Because Parents have failed to prove that their interests are inadequately represented in this case, the Court need not consider the other factors outlined in Rule 24(a)(2). Nevertheless, the Court is highly skeptical that Parents can show that they have a sufficient "interest relating to the property or transaction underlying the action" in light of the City's closure of Cambier Park Playground on October 5, 2025.

10

court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Critically, "it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." Worlds v. Dep't of Health and Rehabilitative Servs., 929 F.2d 591, 595 (11th Cir. 1991).

The Court agrees with Parents that, at the outset of these proceedings, Parents shared an interest with the parties in "determining the constitutionality of the parameters of the City's special event permitting process and permit restrictions imposed upon Plaintiff's event." (Doc. #114 p. 10.) Nonetheless, courts may deny permissive intervention in circumstances where it would cause undue delay by injecting new issues into the case. See e.g. ManaSota-88, Inc. v. Tidwell, 896 F.2d 1318, 1323 (11th Cir. 1990) (affirming trial court's denial of permissive intervention where movant "s[ought] to inject numerous issues into the case," protract the litigation, and cause undue delay); Sellers v. United States, 709 F.2d 1469, 1472 (11th Cir. 1983) (affirming the same where intervention "would have expanded th[e] litigation to include disputes" collateral to the litigation).

11

In their Second Motion to Intervene, Parents by their own admission seek to litigate a constitutional issue that no Defendant has challenged in this case: whether "Plaintiff's grossly inappropriate sexualized performances are only afforded limited (if any) protection under the First Amendment," and whether "whatever protection may exist is eviscerated when considered in the context of exposure to children." (Doc. #114, p. 9.)  In light of the City's recent closure of Cambier Park playground, it appears that any interest Parents may have claimed at the outset of the proceedings has now been extinguished.  Therefore, the Court exercises its discretion and declines to allow Parents to intervene under Rule 24(b).

Accordingly, it is now

**ORDERED:**

Chelsea Melone, Theodore Collins, and Kimberly Collins's Motion to Intervene (Doc. #114) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   5th   day of January 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record